******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JANINE LESUEUR *v.* ANDREW LESUEUR
(AC 39759)

Lavine, Prescott and Eveleigh, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dis-
solved, appealed to this court from the judgment of the trial court
granting the defendant's motion for a modification of custody and child
support, and denying her motion for a modification of unallocated ali-
mony and child support. *Held*:

1. The trial court improperly granted the defendant's motion to modify child
support, as the court's factual findings regarding the plaintiff's income
were clearly erroneous: there was no legally proper evidentiary basis
before the court to support its determination of the plaintiff's gross or
net weekly income at the time it considered the motions for modification,
as the court calculated the plaintiff's child support share on the basis
of her income that included alimony, which is not permitted by our
child support statutes or regulations, and although the defendant claimed
that any error was harmless and had a de minimis impact on the court's
order that the plaintiff pay him weekly child support in that the difference
between the child support the court ordered the plaintiff to pay and
what an accurate determination of her weekly income required her to
pay may not have been great, the evidentiary basis of the court's order
was unclear and the error was harmful, as the plaintiff's presumptive
share of support may have been less than the court's order had the
court not included alimony in its calculation of the parties' combined
weekly income.

2. The trial court did not abuse its discretion by terminating the defendant's
child support obligation retroactively to September 2, 2015: contrary to
the plaintiff's claim, that court did not lack sufficient information to
calculate the parties' financial circumstances as of September 2, 2015,
as it had information pertaining to the parties' financial circumstances
in June, 2015, there was no evidence in the record indicating that the
plaintiff's financial circumstances had changed during the summer or
fall of 2015, except that she no longer had custody of the parties' son
since August, 2015, and the plaintiff admitted that her full-time employ-
ment did not change and her salary was not reduced until she filed the
motion for modification of unallocated alimony and child support in
February, 2016; moreover, the plaintiff failed to demonstrate that she
required child support in order to provide for the necessary expenses
of the parties' son, as she presented no evidence that the defendant,
who was the primary custodial parent, was not providing for their son's
necessary expenses for food, shelter and clothing, and certain of the
expenses incurred by the plaintiff were typical of those incurred by any
noncustodial parent during visitation or were voluntary, and not the
necessary expenses contemplated by case law and statute.

3. The trial court did not misconstrue the parties' separation agreement;
that court properly determined that the provision of the agreement
regarding a cap and the tuition limit of a four year college degree from
within the Connecticut state university system did not apply because
the parties and their children had mutually agreed on the postsecondary
institutions the children would attend, and the plaintiff's construction
of the agreement that after the family mutually agreed on the appropriate
educational institutions for their children, the parties would not pay the
cost of tuition that exceeded that of the cap would undermine the
purpose of the agreement to have the parties and their children mutually
agree on the appropriate postsecondary educational institutions the
children should attend.

4. The trial court did not abuse its discretion in denying the plaintiff's motion
to modify unallocated alimony and child support: although the plaintiff
claimed that the trial court, which had determined that a reduction
in her salary constituted a substantial change in circumstances, was
obligated to consider all of the statutory (§ 46b-82) factors in ordering
alimony in accordance with the needs and financial resources of the

parties, the plaintiff failed to consider that the trial court stated that in ruling on the motion to modify unallocated alimony and child support it had considered the relevant statutes and case law and did not need to make explicit reference to the statutory criteria that it considered in making its decision; moreover, because the fundamental purpose of child support is to provide for the care and well-being of minor children, and child support follows the child, the plaintiff's claim that the amount of money she received from the defendant was reduced due to the fact that she no longer was receiving child support for the parties' daughter was unavailing, as the court found that the unallocated support the plaintiff was receiving continued to be sufficient to fulfill its intended purpose to equalize the income of the parties and support the children.

Argued March 23—officially released December 4, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Stanley Novack*, judge trial referee; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Tindill, J.*, granted the defendant's motion for modification of custody and child support; subsequently, the court, *Tindill, J.*, denied the plaintiff's motions for modification of unallocated alimony and child support, and the plaintiff appealed to this court; thereafter, the court, *Tindill, J.*, denied the plaintiff's motion for an articulation; subsequently, this court granted the plaintiff's motion for review, and the court, *Tindill, J.*, issued an order. *Reversed in part*; *further proceedings*.

*Janet A. Battey*, with whom were *Olivia M. Hebenstreit* and, on the brief, *Gaetano Ferro*, for the appellant (plaintiff).

*Harold R. Burke*, for the appellee (defendant).

*Opinion*

LAVINE, J. In this postmarital dissolution appeal, the plaintiff, Janine LeSueur, appeals from the postjudgment orders of the trial court granting the motion for modification of custody and child support filed by the defendant, Andrew LeSueur, and denying her motion for modification of unallocated alimony and child support. Specifically, the plaintiff claims that the court, *Tindill, J.*, (1) abused its discretion by granting the defendant's motion to modify custody and child support because the child support order is predicated on clearly erroneous factual findings and because it terminated the defendant's child support obligation retroactively without sufficient information to evaluate the parties' financial circumstances, and without considering that she continued to incur and pay expenses for the parties' son from September 2, 2015, until the date of the hearing; (2) misconstrued the parties' separation agreement (agreement) regarding the parties' obligations to pay for their children's postsecondary education; and (3) abused its discretion by denying her motion to modify unallocated alimony and support. We affirm in part and reverse in part the judgment of the trial court.

The parties' marital history previously was set forth in *LeSueur* v. *LeSueur*, 172 Conn. App. 767, 162 A.3d 32 (2017), which concerned an appeal by the defendant from certain postjudgment motions (defendant's appeal). The parties were married on November 28, 1992, and divorced on January 27, 2011. Id., 770. At the time of dissolution, "the parties had two minor children: a daughter, born in July, 1997; and a son, born in January, 1999. The judgment of dissolution incorporated the parties' separation agreement that provided that the plaintiff and the defendant would have joint legal custody and the plaintiff primary physical custody of the two children. The separation agreement also provided . . . that the defendant . . . pay the plaintiff unallocated alimony and child support from March 1, 2011 until June 30, 2020." Id. Subsequently, the defendant assumed primary physical custody, first of the parties' daughter; id., 770–71; and then their son. The defendant's appeal concerned issues related to child support for the parties' daughter. The present appeal concerns child support related to their son, among other things, and is factually and procedurally distinct from the defendant's appeal.

The record in the present appeal reveals the following procedural history. On August 14, 2015, the defendant filed a motion to modify custody and child support, alleging in part that circumstances regarding custody of the parties' son had changed substantially. The defendant represented that the parties had agreed that, as of July 31, 2015, their son would live with the defendant and have liberal visitation with the plaintiff.[1] The defendant, therefore, asked the court to terminate his child

support obligation to the plaintiff and to order the plaintiff to pay him child support.[2] On February 8, 2016, the court accepted the parties' stipulation regarding the son's custody change and scheduled a hearing on the issue of child support.

On February 10, 2016, the plaintiff filed two motions for modification of certain provisions of the separation agreement. In one motion, she claimed that there had been a substantial change in her financial circumstances due to a reduction in her employment and salary. She, therefore, asked the court to increase the amount of unallocated alimony and child support she received from the defendant.[3] In her second motion, titled "Motion for Modification of Children's Expenses and Tuition, Postjudgment," the plaintiff claimed that there had been a substantial change in her financial circumstances, and therefore, she asked the court to order the defendant to pay 100 percent of the educational "add-on" expenses for their son and all costs associated with his private school tuition.[4] (Internal quotation marks omitted.)

The court heard argument on the parties' motions on three days in the spring of 2016,[5] and requested that the parties submit posthearing briefs. The court issued orders on the defendant's motion to modify child support on October 11, 2016. The court found that the parties' son had been living with the defendant since the date he filed his motion to modify child support and that he had continued to pay the plaintiff child support in the amount of $996.27 per week since September 1, 2015. The court granted the defendant's motion to modify child support, thereby terminating his child support obligation to the plaintiff retroactive to September 2, 2015, and ordered the plaintiff to reimburse the defendant for the child support that he had paid her while their son was living with him.

On October 13, 2016, the court issued orders on the plaintiff's motion for modification of alimony and support and motion for modification of children's expenses and private school tuition. The court found that the plaintiff's salary had decreased since the time of dissolution and that the decrease constituted a substantial change of circumstances. The court also found that the plaintiff's monthly expenses had decreased since January 27, 2011. In addition, the court found that the pretax income from employment formulae used to calculate the amount of unallocated support the defendant was to pay the plaintiff continued to be sufficient to fulfill the intended purpose of equalizing the incomes of the parties and supporting the children. See footnote 3 of this opinion. The court, therefore, denied the plaintiff's motion to modify unallocated alimony and child support.[6]

Pursuant to the oral request of the parties' counsel; see footnote 5 of this opinion; the court found that, had

the family stayed intact, the parties more likely than not would have provided support for their children's postsecondary education. It also found that the parties are well educated and have the income and assets to assist their children with the cost of higher education. The court found ample evidence of the children's academic commitment, preparedness, and athletic prowess. The parties mutually had agreed that their daughter should attend Princeton University and that their son should attend Dartmouth College.[7] The court also concluded that, pursuant to the agreement, neither the "UConn cap" nor the cost of a four year degree within the Connecticut state university system was applicable.[8] The court, therefore, ordered the parties to "timely pay education support . . . to Princeton University and Dartmouth College" as required by paragraphs 7 (f) and 13 (B) (iv) of the separation agreement. The plaintiff appealed.

We begin with the well settled standard of review in family matters. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Ferraro* v. *Ferraro*, 168 Conn. App. 723, 727, 147 A.3d 188 (2016).

I

The plaintiff's first claim is that the court abused its discretion by granting the defendant's motion to modify custody and child support because (1) its child support order is predicated on a clearly erroneous factual finding, and (2) it terminated the defendant's child support obligation retroactively without sufficient information to calculate the parties' financial circumstances as of September 2, 2015, and without considering that she continued to incur and pay expenses related to the son.[9] We agree that the court's order that the plaintiff pay child support is predicated on a clearly erroneous factual finding. We do not agree, however, that the court lacked sufficient information regarding the parties' financial circumstances as of September 2, 2015, or that the voluntary expenses the plaintiff incurred overcame the presumption that child support follows the child.

The following additional facts are relevant to our resolution of this claim. As previously stated, as of July 31, 2015, pursuant to the parties' informal agreement, their son began to reside with the defendant. On August 14, 2015, the defendant filed a motion for modification of custody and child support. He represented that there had been a substantial change in circumstances due to the fact that the parties' son was living with him and requested that, because he had become financially

responsible for their son, his child support obligation to the plaintiff be terminated and that the plaintiff be ordered to pay him child support. On February 8, 2016, the court accepted the parties' stipulation that their son reside with the defendant and ordered a hearing to be held on the issue of child support.

The parties appeared before the court for an evidentiary hearing on March 28, May 17, and June 1, 2016. At that time, the defendant argued that the change in the primary physical custody of the parties' son required a modification of the child support portion of the unallocated support order because child support follows the child. He also argued that he had been paying the plaintiff child support pursuant to the court's July, 2015 order that modified his child support obligation when he assumed custody of the daughter. The defendant contended that, as a matter of law and equity, he was entitled to be reimbursed by the plaintiff for the child support he had paid her since September 10, 2015, the date he served the plaintiff with the motion to modify child support.

The plaintiff argued that the court should not modify the defendant's child support obligation because the agreement called for unallocated alimony and child support calculated on the basis of the defendant's pretax income from employment and that alimony and child support should not be broken into separate amounts.[10] The plaintiff requested that, if the court granted modification of child support and did so retroactively, to order retroactivity from February 8, 2016, the date the transfer of custody was accepted by the court, not the date the defendant's motion to modify was served. In addition, the plaintiff claimed she continued to incur expenses for their son after the motion was served.

In its order, the court found, contrary to the plaintiff's argument, that the defendant was not seeking to modify the term, duration, or the percentage of the unallocated support formulae set forth in paragraph 12 of the agreement, but was seeking a determination of the plaintiff's child support obligation for the parties' son who resided with him. The court also found that the defendant had demonstrated a substantial change in circumstances that justified a modification of child support, i.e., the son was living full-time with him as of the date of the motion for modification was filed. The defendant had paid the plaintiff child support in the amount of $996.27 per week since September 1, 2015. The court, therefore, granted the defendant's motion to modify child support and terminated his child support obligation retroactively to September 2, 2015. The court found that the defendant was entitled to reimbursement from the plaintiff in the amount of $57,783.66.

The court found on the basis of the parties combined weekly income of $12,980 that the plaintiff's presumptive child support obligation for the parties' son pursu-

ant to the guidelines was $137 per week. The court, therefore, ordered the plaintiff to pay the defendant $137 per week in child support, commencing November 1, 2016.

A

The plaintiff claims that the court improperly granted the defendant's motion to modify child support and ordered her to pay the defendant child support on the ground that the court's factual finding regarding her annual income is clearly erroneous because it improperly includes alimony and child support income. We agree.

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Citation omitted; internal quotation marks omitted.) *Mensah* v. *Mensah*, 145 Conn. App. 644, 651–52, 75 A.3d 92 (2013).

"The [plaintiff] is entitled to relief from the trial court's improper rulings only if one or more of those rulings were harmful. . . . It is well settled that the burden of establishing harm rests on the appellant. . . . To meet this burden in a civil case, the appellant must show that the ruling would likely affect the result." (Citations omitted; internal quotation marks omitted.) *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 30–31, 783 A.2d 1157 (2001).

The following additional facts are relevant to our resolution of this claim. On March 29, 2017, after she had appealed, the plaintiff filed a motion for articulation; see Practice Book § 66-5; requesting, among other things, that the trial court articulate the basis of its calculation of the court's child support guidelines worksheet docket number 150.[11] The court denied the motion for articulation, and the plaintiff filed a motion for review in this court. See Practice Book § 66-7. This court granted the motion for review and ordered the trial court to articulate, in relevant part, the following: (1) the factual basis for stating on worksheet number 150 that the plaintiff's gross weekly income was $5820 and that her net weekly income was $3680; (2) whether the alimony received by the plaintiff was included in the calculation that determined the plaintiff's gross income as stated on worksheet number 150; and (3)

the factual basis for stating on worksheet number 150 that the defendant's net weekly income was $9301.

In its articulation, the trial court stated that the factual basis for using $5280 as the plaintiff's gross weekly income and $3680 as her net weekly income was the plaintiff's May 17 and May 20, 2016 financial affidavits and her May 17, 2016 testimony. The court further stated that the alimony received by the plaintiff was not included in her gross income amount on worksheet number 150. Additionally, the court articulated that the factual basis for using $9301 as the defendant's net weekly income was his May 17, 2016 financial affidavit and his testimony on May 17, 2016.

On appeal, the plaintiff claims that in determining her annual income, the court erred by utilizing the information on the financial affidavit she submitted on May 20, 2016, which included income in the form of alimony,[12] and not the worksheets submitted by the parties at the hearing on May 17, 2016. The worksheet that the plaintiff submitted states that her gross weekly income is $1827 and her net weekly income is $1332. The worksheet that the defendant submitted states that the plaintiff's gross weekly income is $2697 and her net weekly income is $2141. Neither of the worksheets submitted by the parties included alimony income to the plaintiff. In October, 2016, when the court issued its decisions on the motions for modification submitted by the parties, it appended worksheet number 150 to its orders. Worksheet number 150 states the court's findings that the plaintiff's gross weekly income was $5820 and her net weekly income was $3680. In its articulation, the court stated that it used the plaintiff's financial affidavit, not her worksheet, to make its calculations, and that it did not include the plaintiff's income from alimony when it determined her annual income.

On the basis of our review of the exhibits in the record and the discrepancies between the parties' worksheets regarding the plaintiff's income and the court's determination, we are left with the firm conviction that a mistake has been made. There is no legally proper evidentiary basis before the court to support its determination of the plaintiff's gross or net weekly income at the time it considered the motions for modification. In addition to using the incorrect documents to calculate the plaintiff's income, the plaintiff contends that the court improperly included alimony in its calculations. The plaintiff included the alimony she received on her financial affidavit, and therefore, because the court used the plaintiff's financial affidavit, it necessarily must have included the plaintiff's alimony when it performed its calculations. We agree with the plaintiff that, pursuant to our child support statutes and regulations, the court may not include income from alimony when it calculates the income of an alimony recipient for purposes of determining child support.

"Our review of the court's interpretation of . . . § 46b-215a-1 (11) . . . of the Regulations of Connecticut State Agencies is plenary. . . . Section 46b-215a-1 (11) of the Regulations of Connecticut State Agencies defines gross income as the average weekly earned and unearned income from all sources before deductions . . . . That section includes a nonexhaustive list of twenty-two inclusions. In that list of inclusions is: alimony being paid by an individual who is not a party to the support determination. . . . Regs., Conn. State Agencies § 46b-215a-1 (11) (A) (xix). The specific wording of this inclusion makes clear that only alimony received from a nonparty to the support determination is included in gross income." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Robinson* v. *Robinson*, 172 Conn. App. 393, 397–98, 160 A.3d 376, cert. denied, 326 Conn. 921, 169 A.3d 233 (2017); see also General Statutes § 46b-84.[13]

The defendant agrees that the court's finding of the plaintiff's weekly income is erroneous, but he argues that the error is harmless and had a de minimis impact on the court's order that the plaintiff pay him $137 per week in child support. The defendant, however, provides no legal support for his de minimis argument, and we are aware of none.

The defendant's argument is predicated on his calculation of the presumptive minimum child support pursuant to the child support guidelines. "[W]hen a family's combined net weekly income exceeds $4000, the court should treat the percentage set forth in the schedule at the highest income level as the presumptive ceiling on the child support obligation, subject to rebuttal by application of the deviation criteria enumerated in the guidelines, as well as the statutory factors described in [General Statutes] § 46b-84 (d)." *Maturo* v. *Maturo*, 296 Conn. 80, 106, 995 A.2d 1 (2010). "The guidelines provide in relevant part that, [w]hen the parents' combined net weekly income exceeds [$4000], child support awards shall be determined on a case-by-case basis, and the current support prescribed at the [$4000] net weekly income level shall be the minimum presumptive amount." (Internal quotation marks omitted.) Id., 91. The guidelines establish a child support award as "the entire payment obligation of the noncustodial parent, as determined under the . . . guidelines . . . ." (Emphasis omitted; internal quotation marks omitted.) Id., 117.

On the basis of his weekly income alone, the defendant argues that the parties' combined weekly income exceeds $4000, and therefore the child support for their son should not exceed the presumptive maximum of 12.04 percent of that income. Given the disparity in the plaintiff's annual income reported on the defendant's worksheet and the court's worksheets, the defendant calculates that the range of the parties' combined

weekly income is between $10,815.38 and $11,261.63, which results in a presumptive maximum child support award of between $1302.17 and $1355.90 per week.

Although we may agree that there is a permissible range between the presumptive minimum and maximum child support when the parties' combined income exceeds $4000 per week; see *Dowling* v. *Szymczak*, 309 Conn. 390, 402, 72 A.3d 1 (2013) ("as long as the child support award is derived from a total support obligation within this range—between the presumptive minimum dollar amount and the presumptive maximum percentage of net income—a finding in support of a deviation is not necessary"); there is no corresponding permissible range of child support owed by the noncustodial parent. A noncustodial parent's child support obligation is to be based on his or her proportionate share of the parties' combined net income. Id., 404.

In the present case, the trial court had two sets of worksheets filed by the parties and two sets of financial affidavits. The plaintiff's stated income is different on each page and consequently each figure constitutes a different percentage of the parties' combined net weekly income, which affects the amount of the plaintiff's child support obligation regardless of the presumptive amount. Moreover, the trial court calculated the plaintiff's child support share on the basis of her income that included alimony, which is not permitted by our child support statutes or regulations. Although, as the defendant argues, the difference between the child support the court ordered the plaintiff to pay and what an accurate determination of her weekly income requires her to pay may not be great, the evidentiary basis of the court's order is unclear. See *Ferraro* v. *Ferraro*, supra, 168 Conn. App. 731 (figures on worksheets and affidavits did not match, court must provide basis for support determinations it makes). Moreover, the error is harmful. The plaintiff's presumptive share of support may have been less than $137 if the court had not included alimony in its calculation of the parties' combined weekly income.

The court's finding with respect to the plaintiff's income is clearly erroneous and for that reason, the court improperly granted the defendant's motion to modify child support with respect to the child support it ordered the plaintiff to pay. We, therefore, reverse the judgment in part and remand the case for a new hearing with regard to the parties' respective child support obligations.

B

The plaintiff's second claim regarding the court's child support order is that the court abused its discretion by terminating the defendant's child support obligation retroactively because (1) the court lacked sufficient information to calculate the parties' financial circum-

stances as of September 2, 2015, and (2) she continued to pay for some of the expenses of the parties' son from September 2, 2105, until the time of the hearing. We disagree.

"Where the legal conclusions of the trial court are challenged, on appeal those conclusions are subject only to the test of abuse of discretion. . . . Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . The salient inquiry is whether the court could have reasonably concluded as it did. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Hayward* v. *Hayward*, 53 Conn. App. 1, 8, 752 A.2d 1087 (1999). Trial courts have "broad discretion in deciding motions for modification." *Noce* v. *Noce*, 181 Conn. 145, 149, 434 A.2d 345 (1980).

General Statutes § 46b-86 (a) "governs the availability of retroactive modification of unallocated alimony and child support orders." *Cannon* v. *Cannon*, 109 Conn. App. 844, 849, 953 A.2d 694 (2008). Section 46b-86 (a) provides, in relevant part: "No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court *may* order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party . . . ." (Emphasis added.)

"Although there is no bright line test for determining the date of retroactivity of child support payments, this court has set forth factors that may be considered. Specificcally, in [*Hane* v. *Hane* 158 Conn. App. 167, 176, 118 A.3d 685 (2015), this court] expressly noted that a retroactive award may take into account the long time period between the date of filing a motion to modify, or . . . the contractual retroactive date, and the date that motion is heard . . . . The court may examine the changes in the parties' incomes and needs during the time the motion is pending to fashion an equitable award based on those changes. . . . Moreover, § 46b-86 (a) accords deference to the trial court by permitting it to make a modification to a party's child support obligation retroactive to *any* period during which there is a pending motion for modification." (Citation omitted; emphasis in original; internal quotation marks omitted.) *LeSueur* v. *LeSueur*, supra, 172 Conn. App. 780.

The following facts are relevant to the plaintiff's claim. The defendant previously had filed a motion for modification of unallocated child support and custody on June 3, 2014, due to the fact that he had assumed physical custody of the parties' daughter. In that motion,

the defendant did not request modification retroactive to the date the motion was served on the plaintiff. Id., 782. The parties' agreement that their daughter live with the defendant was accepted by the court, *Hon. Stanley Novack*, judge trial referee, in December, 2014, and the matter was continued several times thereafter. Id. The defendant did not request retroactive modification until February 25, 2015. Id.

The issue of child support for the parties' daughter was not addressed until May 7, 2015, when Judge Tindill held a hearing on the defendant's motion for modification of unallocated alimony and child support. Id., 773. The court issued a memorandum of decision regarding child support on July 31, 2015.[14] Id. Almost immediately thereafter, the parties' son took up residence in the defendant's home, and the defendant filed the present motion for modification of custody and child support on August 14, 2015. The motion was served on the plaintiff on September 10, 2015. On the first day of the hearing on the present motions, the court stated that it was taking judicial notice of its July 31, 2015 order and its order accepting the parties' stipulation that the defendant assumed physical custody of the parties' son.

1

On appeal, the plaintiff argues that the court lacked sufficient information to calculate the parties' financial situation on September 2, 2015, and relies on the procedural history and dicta in this court's decision with respect to the defendant's appeal. In that appeal, this court stated that the trial court "did not have the information necessary to make its child support orders retroactive . . . because the parties did not submit financial affidavits at or close to that date [of service]." *LeSueur* v. *LeSueur*, 172 Conn. App. 782. This court continued quoting from Judge Tindill's July 31, 2015 memorandum of decision that the defendant had not submitted "a signed, sworn financial affidavit until ordered to do so by the court on May 22, 2015. Prior to June 8, 2015, the most recent financial affidavits filed were those filed on January 27, 2011." (Internal quotation marks omitted.) Id., 783. We infer from the trial court's July 31, 2015 memorandum of decision that it had current information regarding the parties' financial circumstances as of June 8, 2015, which is approximately three months prior to September 2, 2015.

The defendant argues, in part, that the court had sufficient evidence by which it could make its child support orders retroactive. Namely, that on September 10, 2015, the date the plaintiff was served with the motion for modification, the defendant was the son's custodial parent pursuant to the parties' agreement. He continued to pay child support to the plaintiff notwithstanding that he was their son's custodial parent and he had costs attributable to the son. The plaintiff contributed no financial support to the defendant for their

son's care. Significantly, the court had issued orders relative to the parties' daughter on July 31, 2015, pursuant to the financial data available to the court at that time. Moreover, although the defendant had assumed custody of the son in early August, 2015, the court ordered the plaintiff to pay the defendant child support from November 1, 2016, until the son completed high school in May, 2017.

The record supports the defendant's argument. The motion to modify unallocated alimony and child support was served on the plaintiff on September 10, 2015, the defendant had assumed primary physical custody of the son in August, 2015, and the son was living full-time in the defendant's home while the defendant continued to pay the plaintiff pursuant to the July 31, 2015 child support order. We conclude on the basis of the court's memorandum of decision that it had information pertaining to the parties' financial circumstances in June, 2015, which was at or near the time when the defendant served the motion for modification of unallocated alimony and child support on the plaintiff. There is no evidence in the record indicating that the plaintiff's financial circumstances had changed during the summer and fall of 2015, except that she no longer had custody of the parties' son. The record discloses, and the plaintiff admitted during the hearing on the present motions, that her full-time employment did not change and her salary was not reduced until she filed the motion for modification of unallocated alimony and child support in February, 2016.

2

The plaintiff also claims that the court improperly modified the child support order retroactive to September 2, 2015, because she continued to pay expenses of the parties' son from September 2, 2015, to the date of the hearing even though the son was not primarily living in her home. She claims that if the court granted the defendant's motion to modify retroactively, the retroactivity should only be to February 8, 2016, which is when the court accepted the parties' agreement that their son live with the defendant, and the date on which the defendant first requested that the motion be granted retroactively.

In her brief on appeal, the plaintiff argues that she testified as to the expenses she incurred for the son. Although the court made no findings with respect to the expenses the plaintiff claims that she paid; see *Wyatt Energy, Inc.* v. *Motiva Enterprises, LLC*, 308 Conn. 719, 739–40, 66 A.3d 848 (2013) (recitation of testimony without more does not constitute finding); the court found that the plaintiff's expenses with respect to her children had declined. The court also found that the son was living full time with the defendant "as of the date of the instant motion." It is undisputed that the son moved to the defendant's home in August, 2015.

General Statutes § 46b-224 specifically "addresses the question of how a change in custody affects the payment of child support . . . ." *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 549, 46 A.3d 112 (2012). "Child support . . . furnishes the custodian with the resources to maintain a household to provide for the care and welfare of the children; in essence, the custodian holds the payments for the benefits of the child. Consequently, once custody changes, there is no immediately apparent reason for the former custodian to continue to receive the payments because the presumption is that the former custodian is no longer primarily responsible for providing the children's *necessary living expenses, including food, shelter and clothing*. In turn, permitting the diversion of funds away from the parent providing for the care and well-being of minor children when custody changes, pursuant to the parents' contractual agreement, would contravene the purpose of child support." (Emphasis added.) Id., 555.

"Modification, including retroactive modification, of a child support order upon a change of custody under § 46b-224, comports with the default rule that child support follows the children, unless the trial court has made a finding that another arrangement is appropriate. This statute indicates that the legislature viewed the provision of custody as the premise underlying the receipt of child support payments; the legislature did not envision that the custodian would be required to pay child support to a person who does not have custody, as well as (in cases in which the obligor obtains custody) expend resources to provide directly for the care and welfare of the child. In fact, under the Child Support and Arrearage Guidelines . . . child support award is defined as the entire payment obligation of the *noncustodial* parent. . . . Once custody is transferred, however, there is no longer any basis for the presumption that the former custodian is spending his or her share of the support on the children." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Coury* v. *Coury*, 161 Conn. App. 271, 299, 128 A.3d 517 (2015).

In *Tomlinson*,[15] our Supreme Court stated that "if the obligor becomes the new primary custodial parent, the obligor is no longer required to pay child support to the former custodian. . . . The immediate result . . . is . . . the originally designated payee who no longer has custody of the child does not continue to receive support payments following the change in custody, and the payments are retained by . . . the party who does have custody." *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 549–50.

In the defendant's appeal, this court stated on the basis of the plaintiff's testimony that she had rebutted the presumption that "the former custodian is no longer primarily responsible for providing the children's neces-

sary living expenses" because she continued to have expenses associated with the care of the parties' daughter. (Internal quotation marks omitted.) *LeSueur* v. *LeSueur*, supra, 172 Conn. App. 779. We have reviewed the transcript of the hearing with respect to the parties' son and agree that the plaintiff testified that she paid certain of the son's expenses.[16] The court, however, made no finding that the expenses were necessary expenses. With regard to those expenses, her payments were voluntary and not for necessary expenses contemplated by the child support scheme.

In the present appeal, the plaintiff presented no evidence, and our review disclosed none, that the defendant, who was the primary custodial parent, was not providing for their son's necessary expenses for food, shelter, and clothing. Although the plaintiff testified that she incurred expenses on behalf of the son, some of them were typical of those incurred by any noncustodial parent during visitation. The plaintiff presented no evidence that she was not able to pay for those expenses with her salary or income from investments or unallocated alimony and child support she was receiving. She also presented no evidence that she incurred expenses for the parties' son because the defendant failed to meet the son's necessary needs. The record contains evidence that many of the expenses the plaintiff incurred were the result of her voluntary decision to provide the son with the unlimited use of a credit card. The plaintiff voluntarily incurred those expenses, and they are not the necessary expenses contemplated by our case law and statutes.[17]

The court found that the parties had agreed that their son could move to the defendant's home soon after the court issued its July 31, 2015 child support orders regarding their daughter. It also found that the son had been living with the defendant since the time the motion to modify custody and child support was filed and that the defendant continued to pay the plaintiff child support pursuant to the court's July 31, 2015 orders. There is no explanation in the record as to why the motion to modify, filed in August, 2015, was not heard until February 8, 2016, which is when the court accepted the parties' agreement that the defendant would assume custody of their son.

On the basis of our review of the record, the court's orders, and the briefs of the parties, we conclude that the court did not abuse its discretion by granting the defendant's motion for modification and terminating the defendant's child support obligation to pay the plaintiff retroactively, as the plaintiff failed to demonstrate that she required child support in order to provide for the son's necessary expenses. However, in her reply brief, the plaintiff noted that the court terminated the defendant's child support obligation as of September 2, 2015, which predates the time his motion to modify

custody and child support was served on the plaintiff on September 10, 2015. On remand, the court is ordered to set the retroactive date to a time subsequent to September 10, 2015.

## II

The plaintiff's second claim is that the court misconstrued the separation agreement and consequently ordered the parties to timely pay the postsecondary tuition expenses of their children. We disagree that the court misconstrued the separation agreement.

During the hearing on their motions for modification, the parties asked the court to determine their respective obligations, if any, to pay the college tuitions of their children. Article 13 of the separation agreement, titled Miscellaneous Child Support Matters, is at the center of the plaintiff's claim. Paragraph 13 (B) (iv) of the separation agreement concerns the children's postsecondary education and provides as follows: "In the event that a child, upon graduating high school, attends a fully accredited college or university and matriculates in a course of study leading to an undergraduate degree, the parties shall each contribute their proportionate share to the cost thereof, in accordance with their income at that time (including any [pretax income from employment] being paid by [the defendant] to [the plaintiff]), after the child has made application for all available financial aid, grants and scholarships. The [defendant] and [the plaintiff] shall consult with each other and with the child concerned with respect to the education of any or all of the children and with respect to the selection of schools or colleges which they shall attend. The selection of said schools and/or colleges shall be by mutual agreement. In the event that the parties are unable to agree on a school and/or their respective obligations therefore, it is understood and agreed that the Court shall retain jurisdiction pursuant to the . . . General Statutes to determine the amount of each [party's] required contribution, up to the cost of in state tuition at a school which is part of the Connecticut state university system and either party may submit the dispute to a court of competent jurisdiction for determination thereof. The parties' obligations pursuant to this [Article 13 (B) (iv)] shall continue with respect to each child despite a child having attained the age of majority, but in no event beyond a child's twenty-third . . . birthday."

During the hearing, the defendant testified that paragraph 13 (B) (iv) of the separation agreement meant that there was no limit, or so-called UConn cap, on their respective tuition contributions if the parties agreed on the respective school or college their children would attend. The plaintiff testified that she believed that the UConn cap applied if the parties could not agree on their respective financial obligations. The court found that the parties mutually agreed that their daughter

would attend Princeton University and their son Dartmouth College and that neither the UConn cap nor the cost of a four year degree within the Connecticut state university system applied as contended by the plaintiff.

On appeal, the plaintiff claims that the court improperly ordered the parties to pay their children's tuition at their respective colleges because the court did not find that the parties had agreed to exceed the limit imposed by General Statutes § 46b-56c (f).[18] The plaintiff, therefore, asserts that the court erred in finding that the UConn cap and the cost of instate tuition at a school that is part of the Connecticut state university system do not apply and improperly ordered the parties to pay timely educational support to Princeton University and Dartmouth College as required by paragraphs 7 (F) and 13 (B) (iv) of the separation agreement.

"It is well established that a separation agreement, incorporated by reference into a judgment of dissolution, is to be regarded and construed as a contract. . . . Accordingly, our review of a trial court's interpretation of a separation agreement is guided by the general principles governing the construction of contracts. . . . A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 354–55, 999 A.2d 713 (2010).

On the basis of our review of Article 13 (B) (iv) of the agreement, we conclude that the language is clear and unambiguous. The first clause of the subject article addresses the circumstances under which the parties will pay postsecondary tuition for their children. The child must have been graduated from high school, desires to attend a fully accredited college or school, and matriculated in a course of study leading to an undergraduate degree. The next clause states that each party shall pay his or her proportionate share in accordance with his or her income at the time after the child has applied for financial assistance. The next sentence addresses the manner in which the decision as to the postsecondary educational institution the child is to attend is to be made, i.e., the parties shall consult with each other and with the child concerned with respect to the education of any or all of the children and with respect to the selection of schools or colleges which they shall attend. The selection of said schools and/or

colleges shall be by *mutual agreement.*

In the present case, there is no dispute that the parties and their children mutually agreed that their daughter would attend Princeton University and their son would attend Dartmouth College. Because the parties *mutually agreed*, it is unnecessary to consider the next sentence of the article, which only applies when the parties are unable to agree on the *educational institution* and/or their respective obligations *therefore*. The word *therefore* refers back to the educational institution about which there is no agreement. Consequently, the court properly determined that the UConn cap and tuition limit on a four year degree from a Connecticut state university system did not apply under the present circumstances where the parties and their children mutually agreed that their daughter should attend Princeton University and their son should attend Dartmouth College.

Moreover, we will not construe an agreement to reach a patently absurd result. The separation agreement clearly is intended to have the parties and their children mutually contemplate, investigate, and agree on the appropriate postsecondary educational institutions the children shall attend. Common sense dictates that tuition and related costs would be taken into consideration during that process. The plaintiff's construction of the agreement that after the family mutually agrees on the appropriate educational institutions for their children the parties will not pay the cost of tuition that exceeds that of the UConn cap would undermine the very purpose of the agreement. We can only imagine how family harmony would be disrupted and the disappointment, frustration, and perhaps anger, the child may feel after the family agrees to the postsecondary educational institution the child would attend but that she or he alone must bear any tuition burden that exceeds the UConn cap.[19] We decline to sanction the plaintiff's construction of the unambiguous language of the separation agreement. We, therefore, conclude that the court properly determined that the provision of the separation agreement regarding the UConn cap and the tuition limit of a four year college degree from the Connecticut state university system do not apply because the parties and their children mutually agreed on the postsecondary institutions the children would attend, i.e., Princeton University and Dartmouth College.

### III

The plaintiff's final claim is that the court improperly denied her motion to modify unallocated alimony and child support. We do not agree.

The following facts are pertinent to this claim. On February 10, 2016, the plaintiff filed a motion for modification of unallocated alimony and support, postjudg-

ment, asking the court to increase the amount of unallocated alimony and support she received from the defendant on the basis of his pretax income from employment. In the motion, the plaintiff quoted that portion of the agreement regarding the amount of alimony and support she was to receive from the defendant as of August 1, 2015. She also quoted paragraph 12.8 (c) of the agreement, which states in relevant part: "In no event shall the percentage formulae set forth in paragraph 12.1 (a), (b) and (c) of this Agreement or in any decree incorporating its provisions . . . be changed or amended by the parties or the court; except that either party shall be entitled to seek modification of the percentage formulae . . . in the event of a substantial change of circumstances of either party . . . or ordered by a [c]ourt that one or more of the children shall reside with the [defendant] as his or her primary residence. At the time that this agreement was executed the [plaintiff] had a salary . . . of $125,000 per year and for the preceding year her income was $75,000 per year. At the time that this agreement was executed, the [defendant] had [pretax income from employment] totaling $647,000 and for 2009 he had [pretax income from employment] for 2010 totaling $477,459." The plaintiff argued that since the dissolution judgment was rendered, her financial circumstances had changed substantially in that her salary had decreased from $125,000 per year to $95,000. She asked the court to increase the defendant's alimony obligation retroactive to the date the motion was served on the defendant.

Following a hearing on the motion, the court found that the plaintiff alleged several substantial changes in circumstances since January 27, 2011, namely that her earnings from employment had decreased significantly, the defendant no longer paid child support for the parties' daughter, the amount of alimony she received from the defendant had decreased on August 1, 2015, pursuant to the dissolution agreement, and the defendant had filed a motion to terminate child support for the parties' son.

In issuing its order, the court stated that it had reviewed the motions of the parties and considered their testimony and all the evidence they had submitted. In addition, the court stated that it had considered the relevant rules, case law and statutory provisions, as well as the arguments of counsel.[20] The court found that the plaintiff has been employed by Shumway Capital, a private family foundation, for the past five years. At the time of dissolution, she was employed full-time at an annual salary of $125,000. The court found that at approximately the time she filed the motion to modify unallocated alimony and child support on February 10, 2016, the plaintiff became a part-time employee earning a salary of approximately $95,000 and that the decrease in the plaintiff's salary constituted a substantial change in circumstances. The court *also* found that the plain-

tiff's monthly expenses for shelter, transportation, the children and her liabilities had decreased since January 27, 2011.

In addition, the court found that following the change of custody with respect to the parties' daughter, the defendant has paid support to the plaintiff in accordance with the agreement and the court's orders. It also found that the agreement's original percentage formulae using the defendant's pretax income from employment to calculate and determine the plaintiff's unallocated support continues to be sufficient to fulfill its intended purpose to equalize the income of the parties and support the children. The court, therefore, denied the plaintiff's motion to modify the percentage formulae of paragraph 12 of the agreement.

On appeal, the plaintiff claims that the court abused its discretion by denying her motion to increase her unallocated alimony and support. She argues that because the court determined that the reduction in her salary constituted a substantial change in circumstances; see General Statutes § 46b-86;[21] the court was obligated to consider all of the factors in General Statutes § 46b-82[22] to order alimony in accordance with the needs and financial resources of the parties, and she cites *Schwarz* v. *Schwarz*, 124 Conn. App. 472, 478, 5 A.3d 548 (once court determines a substantial change in circumstances exists, it must consider all factors in § 46b-82 to order alimony in accord with needs and financial resources of each party), cert. denied, 299 Conn. 909, 10 A.3d 525 (2010). In making this argument, the plaintiff fails to consider that the court stated that in ruling on the motion to modify unallocated alimony and child support, it had considered the relevant statutes and case law. A court need not "make explicit reference to the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." *Caffe* v. *Caffe*, 240 Conn. 79, 82–83, 689 A.2d 468 (1997); see also *Brown* v. *Brown*, 148 Conn. App. 13, 22, 84 A.3d 905 (court expressly stated it had considered all relevant statutes before rendering judgment), cert. denied, 311 Con. 933, 88 A.3d 549 (2014).

Moreover, "[a] fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . No single criterion is preferred over others, and the trial court has broad discretion in varying the weight placed on each criterion under the circumstances of each case." (Internal quotation marks omitted.) *Brown* v. *Brown*, supra, 148 Conn. App. 22. "Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony . . . are relevant to the question of modification."

(Internal quotation marks omitted.) *Borkowski* v. *Borkowski*, 228 Conn. 729, 737, 638 A.2d 1060 (1994).

Paragraph 12.8 (c) of the agreement states: "In no event shall the percentage formulae set forth in paragraph 12.1 (a), (b) and (c) of this Agreement or in any decree incorporating its provisions, in whole or in part, be changed or amended by the parties or the court; except that either party shall be entitled to seek a modification of the percentage formulae set forth in paragraphs 12.1 (a), (b) and (c) in the event of a substantial change of circumstances of either party . . . ." By the agreement's plain terms, the plaintiff was entitled to seek a modification of the formulae used to determine her unallocated alimony and child support on the basis of the defendant's pretax income from employment, but the agreement did not require that the formulae be modified on the basis of the substantial change of circumstances.

In the present case, the plaintiff's employment was reduced from full-time to part-time and her salary was reduced from $125,000 to $95,000, which the court found to be a substantial change of circumstances. The court also found that there had been a significant reduction in the plaintiff's expenses for housing, transportation, and her children. Both of the children were then in the custody of the defendant and residing with him.

"Appellate courts look at the record, and determine whether the [trial] court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Caffe* v. *Caffe*, supra, 240 Conn. 83. We have reviewed the transcripts of the hearing on the parties' motions and the exhibits. The record discloses evidence that supports the court's finding that there has been a decrease in the plaintiff's expenses, most particularly with respect to housing. She had been living in an apartment paying $4700 a month in rent, but purchased a condominium that was in foreclosure and was then paying $2500.86 per month for the mortgage. She acknowledged that the interest payments on the mortgage and property taxes were tax deductible. She was able to purchase a Lexus "demo" automobile and continued to make contributions to her 401k plan. She works thirty hours a week and is partially covered by her employer's health insurance. The plaintiff presented no evidence that she has issues related to poor health or that she is unable to work. She holds a master of business administration degree. Moreover, the defendant has pointed out that the plaintiff's financial affidavit discloses that she has investments that yield significant dividends and interest.

As to the plaintiff's argument that the amount of money she received from the defendant was reduced due to the fact that she no longer was receiving child support for the parties' daughter, child support follows the child. The fundamental purpose of child support is

to provide for the care and well-being of minor children. *Tomlinson* v. *Tomlinson*, supra 305 Conn. 555. Moreover, the agreement contemplated that the children might live with the defendant, which constituted a substantial change of circumstances, warranting a change of unallocated alimony and child support. The court stated that the unallocated support the plaintiff was receiving continued to be sufficient to fulfill its intended purpose to equalize the income of the parties and support the children. The court, therefore, denied the plaintiff's motion to modify the percentage formulae of paragraph 12 of the agreement.

Both of the parties agree that the formulae used to calculate the amount of support the plaintiff is to receive from the defendant's pretax income from employment were not intended to equalize their incomes. According to the defendant, the parties agreed that the plaintiff would receive a greater amount of alimony as the defendant's income increased, but the amount of alimony as a percentage of that income would decline. The defendant notes that their incomes, even after he paid the plaintiff pursuant to the formulae, were never equal, even at the time of dissolution. He argues that "equalize" means that the parties' incomes could be balanced. The parties did not ask the court to articulate what it meant that the unallocated support provided under paragraph 12 of the agreement equalized their incomes, and we will not speculate as to its meaning. That finding, however, is not relevant to our determination of whether the court abused its discretion by denying the plaintiff's motion for modification of unallocated alimony and child support.

When these highly educated and sophisticated parties signed the agreement at the time their marriage was dissolved, they had negotiated its provisions with the assistance of counsel. They bargained for a change of unallocated support if one or both of their children decided to live with the defendant, and they bargained for the percentage of support the plaintiff would receive from the defendant's pretax income from employment and that the percentages stepped down over time. There is no evidence in the record that the plaintiff has brought to our attention that the amount of unallocated alimony and support she receives is insufficient to meet her needs. See *Dombrowski* v. *Noyes-Dombrowski*, 273 Conn. 127, 132, 869 A.2d 164 (2005) (purpose of periodic alimony to provide continuing support). The court, therefore, did not abuse its discretion by denying the plaintiff's motion to modify unallocated alimony and child support.

The judgment is reversed with respect to the trial court's determination regarding the plaintiff's child support obligation and the date on which the defendant's child support obligation terminated, and the case is remanded for further proceedings consistent with this

opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The son's move to the defendant's home coincided with the judgment modifying the child support obligations of the parties with respect to the daughter's residing with the defendant.

[2] The motion to modify custody and child support was served on the plaintiff on September 10, 2015.

[3] Pursuant to the agreement, the amount of unallocated alimony and child support the defendant has to pay to the plaintiff annually is calculated as a percentage of his pretax income from employment. The term of unallocated alimony and child support is from March 11, 2011, until June 30, 2020. The percentage is calculated pursuant to an agreed upon stepdown formula that reduces the percentage of the defendant's pretax income payable to the plaintiff. The amount of the defendant's pretax income from employment on which the plaintiff's alimony is calculated is capped at $1 million annually.

From August 1, 2015, until January 31, 2017, the unallocated alimony and child support the defendant was to pay the plaintiff was to be calculated on the basis of the following formula.

| Pretax Income Received by the defendant from Employment | Percentage to be Paid to the plaintiff |
| --- | --- |
| $0 to $316,000 | 40 percent |
| $316,001 to $660,000 | 26.5 percent |
| $661,000 to $1,000,000 | 19 percent |

[4] Paragraph 13 of the separation agreement, titled "Miscellaneous Child Support Matters," provides in relevant part:

"A. Based on the parties combined parental income the [defendant] shall be responsible for [50] percent of child support 'add-ons' and the [plaintiff] shall be responsible for [50] percent of the child support add-ons. [Add-ons] for purposes of this Agreement include the following: reasonable child care expenses (incurred when a party is working); mutually agreed upon education expenses other than those addressed in C below, including but not limited to tutoring; extracurricular school activities and lessons including sports and music; and summer camp."

[5] During the portion of the hearing held on May 17, 2016, counsel for the parties asked the court to consider an additional matter regarding the parties' obligation to pay for their children's postsecondary education. The court agreed to consider the matter. See part II of this opinion.

[6] The court also denied the plaintiff's motion to modify the allocation of expenses, "add-ons," and private school tuition between the parties. On appeal, the plaintiff has not claimed that the court abused its discretion in that regard. (Internal quotation marks omitted.)

[7] The parties' daughter was recruited to play field hockey at Princeton University and their son was recruited to play ice hockey at Dartmouth College.

[8] See General Statutes § 46b-56c (f). The "UConn cap" refers to the amount of tuition paid by a "full-time in-state student" to attend the University of Connecticut.

[9] The plaintiff does not claim that the court improperly accepted the parties' stipulation that their son would live with the defendant. Her claim pertains only to the court's child support orders.

[10] Paragraph 12.8 (c) of the agreement provides in relevant part: "In no event shall the percentage formulae set forth in paragraph 12.1 (a), (b) and (c) of this Agreement or in any decree incorporating its provisions, in whole or in part, be changed or amended by the parties or the court; except that either party shall be entitled to seek a modification of the percentage formulae set forth in paragraph 12.1 (a), (b) and (c) in the event of a substantial change of circumstances of either party or in the event it is agreed by the parties or ordered by a Court that one or more of the children shall reside with the [defendant] as his or her primary residence."

[11] The subject worksheet is identified as number 150 on the trial court docket list.

[12] The plaintiff's May 17, 2016 financial affidavit shows the plaintiff's gross weekly income to be $5339.56, which includes alimony and child support. The plaintiff reported $7916.66 in gross monthly salary from her employer, $4317.20 of child support, $7134.24 in monthly alimony, and $3770 in monthly dividend and interest income.

[13] General Statutes § 46b-84 (a) provides in relevant part: "Upon or subsequent to the . . . dissolution of any marriage . . . the parents of a minor child of the marriage, shall maintain the child according to their respective

abilities, if the child is in need of maintenance. Any postjudgment procedure afforded by chapter 906 shall be available to secure the present and future financial interests of a party in connection with a final order for the periodic payment of child support.”

[14] The trial court “modified the defendant’s child support obligation retroactive to December 9, 2014, rather than the date that the motion was served on June 30, 2014, because it found that December 9, 2014, was the date when his primary physical custody of the daughter was no longer temporary.” *LeSueur* v. *LeSueur*, supra, 172 Conn. App. 783.

[15] The question in *Tomlinson* was whether a provision in the parties’ separation agreement that expressly prohibited modification of child support pursuant to the nonmodification clause of § 46b-86 (a) precluded a trial court from modifying the child support portion of an unallocated support order. Our Supreme Court noted that “while § 46b-86 (a) addresses the modification of child support in general, § 46b-224 covers the particular effect of a change in custody on preexisting child support orders.” *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 550.

[16] With respect to the defendant’s appeal in *LeSueur* v. *LeSueur*, supra, 172 Conn. App. 767, it is unclear whether the trial court made a factual finding as to whether the expenses paid by the plaintiff on behalf of the parties’ daughter when she was in the defendant’s custody were necessary expenses. This court concluded, however, on the basis of the plaintiff’s testimony in the record that the plaintiff had incurred necessary expenses for the daughter after she had moved to the defendant’s home. Id., 778–79. In the present appeal, the plaintiff again testified that she incurred expenses for the parties’ son after he moved into the defendant’s home. The trial court made no finding that those expenses were necessary expenses. We are constrained by the factual findings of the trial court, as it is well known that appellate courts do not make findings of fact on the basis of the record. See *In re Carissa K.*, 55 Conn. App. 768, 778, 740 A.2d 896 (1999) (appellate courts do not examine record to determine whether trier of fact could have reached conclusion other than one reached and do not retry case).

[17] The plaintiff testified that the parties’ son used the credit card when he ate at restaurants with his friends, to purchase concert tickets, and to pay for Uber rides from the airport, among other things. The son also let the parties’ daughter use his credit card when she misplaced the credit card the plaintiff had provided to her.

[18] General Statutes § 46b-56c (f) is not mentioned in the separation agreement.

[19] Both in the trial court and at oral argument before us, the plaintiff, who is herself a graduate of Princeton University, had no plan for how her children’s tuition would be paid if not pursuant to the separation agreement. She expected the court to fashion a remedy. The court will not fashion a remedy in the face of the unambiguous plan in the parties’ separation agreement.

[20] Our review of the transcript of the hearing discloses that the court took judicial notice of prior proceedings in the file.

[21] General Statutes § 46b-86 (b) provides in relevant part: “In the event that a final judgment incorporates a provision of an agreement in which the parties agree to circumstances, other than as provided in this subsection, under which alimony will be modified including suspension, reduction, or termination of alimony, the court shall enforce the provision of such agreement and enter orders in accordance therewith.”

[22] General Statutes § 46b-82 (a) provides in relevant part: “In determining whether alimony shall be awarded . . . the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties . . . .”