******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICHARD BUEHLER *v.* LILACH BUEHLER
(AC 44080)

Bright, C. J., and Prescott and Clark, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgment of the trial court issuing a postsecondary educational support order pursuant to statute ((Rev. to 2015) § 46b-56c). On appeal, the plaintiff claimed, inter alia, that the court misconstrued § 46b-56c (d) when it entered the support order, because the defendant had excluded him from the college selection process of their daughter, H, and, therefore, failed to satisfy the requirement of § 46b-56c (d) that both parents participate in and agree upon the institution of higher education that H would attend. *Held*:

1. The plaintiff could not prevail on his claim that the trial court, in ordering him to pay a portion of H's college education expenses, misconstrued § 46b-56c (d): although the language of the statute creates a mandatory duty on both parents to participate in and reach an agreement upon which college a child will attend, the court found that the plaintiff had excluded himself from H's college selection process, as the evidence showed that the defendant informed the plaintiff of the colleges to which H had applied but that the plaintiff never discussed this information with either the defendant or H, did not object to any of the colleges or suggest alternative institutions, and did not timely open messages from the defendant asking him to complete financial aid forms for H; moreover, the defendant was not required to seek an order resolving the issue of which institution of higher education H would attend before seeking a support order, as the plaintiff's refusal to participate in H's college selection process did not provide the defendant with notice that the plaintiff would disagree with H's choice of college, and, in granting the defendant's motion, the court exercised its authority pursuant to § 46b-56c (d) to resolve any disagreement between the parties.

2. The plaintiff could not prevail on his claim that the trial court improperly predicated its decision on factual findings from the parties' dissolution of marriage or a consideration of his relationship with H in issuing its support order; the court's memorandum of decision clearly stated that its order was based on the facts surrounding H's college selection process and the plaintiff's failure to participate in that process, not the historical facts regarding the breakdown of the parties' marriage; moreover, the court's finding that the plaintiff did not reach out to H about her high school graduation or ask her about her college preferences merely pointed out one way the plaintiff could have been involved in the college selection process but did not form the basis of the court's decision to enter the educational support order.

3. The trial court's finding that the defendant attempted to include the plaintiff in H's college selection process was not clearly erroneous; evidence in the record showed that the defendant sent the plaintiff e-mails about H's interest in colleges beginning in H's junior year of high school and through the fall of H's senior year of high school.

Argued December 6, 2021—officially released March 22, 2022

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Gordon, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Sommer, J.*, granted the defendant's postjudgment motion for postsecondary educational support, and the plaintiff appealed to this court. *Affirmed*.

*Jon T. Kukucka*, with whom were *Nicole M. Riel*,

and, on the brief, *Johanna S. Katz*, for the appellant (plaintiff).

*Lilach Buehler*, self-represented, the appellee (defendant).

*Opinion*

CLARK, J. This appeal arises out of the trial court's judgment issuing a postsecondary educational support order (support order) pursuant to General Statutes (Rev. to 2015) § 46b-56c[1] in favor of the defendant, Lilach Buehler, and against the plaintiff, Richard Buehler. On appeal, the plaintiff claims that the court (1) misconstrued and misapplied § 46b-56c (d) when it entered the support order, (2) improperly predicated the support order on factual findings made by the dissolution court with respect to the breakdown of the parties' marriage, (3) improperly considered the nature of the plaintiff's relationship with the parties' eldest daughter, Hannah, and (4) erroneously found that the defendant attempted to include him in Hannah's college selection process. We affirm the judgment of the trial court.

The following procedural history provides context for the present appeal. The marriage of the parties was dissolved by order of the trial court, *Gordon, J.* (dissolution court), on June 4, 2008. At that time, the dissolution court reserved jurisdiction regarding orders for the postsecondary education of the parties' three minor children pursuant to § 46b-56c. The postdissolution relationship between the parties has been litigious.[2]

In April, 2016, Hannah, then a junior in high school, began the process of choosing a college to attend. The defendant informed the plaintiff by e-mail[3] that, during spring break, she and their children were going to visit maternal relatives in North Carolina and that they would visit some colleges along the way. The plaintiff responded by asking for a list of colleges Hannah planned to visit and stated that he might join the trip if he were provided with adequate information in a timely manner. The defendant declined to provide the plaintiff with the list of colleges and suggested that the plaintiff contact Hannah directly to arrange his own college tours with her. In its memorandum of decision, the trial court, *Sommer, J.*, found that, "[g]iven the acrimonious character of the parties' relationship, it was not remotely realistic for the plaintiff to accompany them on these early visits . . . ."

In October, 2016, the defendant informed the plaintiff that Hannah had sent her SAT scores to the colleges and universities she was considering. The defendant also requested that the plaintiff complete financial aid applications required for Hannah to receive financial assistance. The plaintiff did not respond to those requests. He also did not discuss with Hannah her academic interests and career aspirations or offer to take her to visit colleges.

In the fall of 2017, Hannah matriculated at Quinnipiac University, majoring in health sciences. Hannah received an academic scholarship, and the defendant

and Hannah paid the balance of her tuition and associated fees with their assets and loans. On October 17, 2017, the defendant filed a motion for order re: postsecondary educational support, postjudgment (motion).

Judge Sommer held a hearing on the defendant's motion on April 17 and September 14, 2018. At the hearing, the plaintiff objected to the motion, arguing that the defendant had excluded him from Hannah's college selection process and therefore had failed to satisfy the requirements of § 46b-56c (d), which provides in relevant part that, "[a]t the appropriate time, both parents shall participate in, and agree upon, the decision as to which institution of higher education or private occupational school the child will attend. . . ." General Statutes (Rev. to 2015) § 46b-56c (d).

The court issued a memorandum of decision on February 8, 2019. In its decision, the court noted that, at the time of dissolution, the dissolution court had found that " '[t]here is no doubt given the premium placed on education and the talents of these parents—and the pride in which they both spoke of their children's educational accomplishments' " that the parents would have provided support to their children for higher education if the family were intact. The dissolution court, therefore, reserved jurisdiction regarding an educational support order pursuant to § 46b-56c. Judge Sommer thus concluded that the "conditions precedent for an educational support order to enter pursuant to . . . § 46b-56c (c)" had been met. See footnote 1 of this opinion.

The court understood the defendant to be seeking an order to establish the percentage of responsibility each of the parties had for Hannah's postsecondary education expenses, including room, board, tuition, books, fees, registration, and application costs. The defendant was not seeking reimbursement for the expenses she already had incurred and had paid at the time the motion was filed. She sought contribution only for expenses incurred for Hannah's future college expenses.

In issuing its order, the court considered the criteria identified in § 46b-56c (c): (1) the parents' income, assets, and other obligations, including obligations to other dependents; (2) the child's need for support to attend an institution of higher education considering the child's assets and ability to earn income; (3) the availability of financial aid from other sources, including grants and loans; (4) the reasonableness of the higher education to be funded considering the child's academic record and the financial resources available; (5) the child's preparation and aptitude for and commitment to higher education; and (6) evidence, if any, of the educational institution the child would attend.

With respect to Hannah's college selection process, the court found that, when Hannah was in high school,

she expressed an interest in pursuing a career in the health sciences and that her guidance counselor helped her identify institutions that offered that course of study. One of the institutions identified was Quinnipiac University, which accepted Hannah as a student and offered her an academic scholarship. The court also found that Hannah diligently had prepared for college and that she had the academic aptitude for success at Quinnipiac University. At the time of the hearing, Hannah successfully had progressed to her sophomore year with a goal of becoming a physician's assistant and had qualified for a partial academic scholarship. As a result, the court found that Hannah met the statutory criteria of § 46b-56c (e). See footnote 1 of this opinion.

The court also found that Hannah needed financial assistance to attend Quinnipiac University. The defendant had paid a portion of Hannah's tuition and assisted Hannah by cosigning a loan from Sallie Mae[4] and obtaining federal financial assistance. On the basis of the parties' financial affidavits and testimony, the court calculated the parties' respective net weekly incomes and expenses and found that both parties had the financial ability to contribute to the cost of Hannah's education at Quinnipiac University. The plaintiff's ability, however, was greater than the defendant's.[5]

The plaintiff objected to the defendant's motion, alleging that the defendant had excluded him from the college application process. He argued that the requirement in § 46b-56c (d) that "both parents shall participate in, and agree upon, the decision as to which institution of higher education . . . the child will attend"; General Statutes (Rev. to 2015) § 46b-56c (d); is a condition precedent to a parent's obligation to contribute to the cost of a child's postsecondary education. He contended that because he did not participate in or agree to Hannah's decision to attend Quinnipiac University, he could not be ordered to contribute to the cost of her attending that institution. He testified at the hearing that he was left out of the process when Hannah was deciding which college to attend and that, in his view, the University of Connecticut would have been a better college for her. The court found that the plaintiff made that claim without any knowledge of the academic program Hannah had selected. Although the plaintiff acknowledged that the defendant had informed him that Hannah was applying to college, he did not make any attempt to determine Hannah's interests and reasons for applying to Quinnipiac University.

The court found that the parties have not communicated effectively since the time of dissolution. The court reviewed the Our Family Wizard records entered into evidence and placed responsibility for the problem primarily on the plaintiff. The e-mail communications by the defendant established that she had sought the plaintiff's participation in the application process. In April,

2016, during Hannah's junior year in high school, the defendant informed the plaintiff that she was taking their children to visit maternal relatives in North Carolina and that they would visit some colleges along the way.[6] According to the court, "rather than focus on Hannah's interests and academic goals that were a key part of her [selection] process or offer to take [Hannah] on . . . college visits, the plaintiff berated the defendant, accusing her in the April 9, 2016 e-mail of deliberately excluding him." The court found that there was ample time after April, 2016, for the plaintiff to have become involved in the college selection process, if he had made the effort to establish a positive relationship with Hannah. In an e-mail dated November 11, 2016, the plaintiff told the defendant that he would discuss Hannah's college applications during his parenting time, but it does not appear that he ever had such a discussion.[7] The court found no evidence that the plaintiff ever offered to take Hannah to visit colleges.

The court also found that the communications between the parties on Our Family Wizard contradicted the plaintiff's claims that the defendant had excluded him from Hannah's college application and selection process. The court found that, "according to the Our Family Wizard records, the defendant informed him via Our Family Wizard of the schools to which Hannah sent her SAT scores, and those to which she applied: Stony Brook University, Quinnipiac University, Drexel University, Marymount College, the University of Connecticut, West Virginia, Loyola College (Maryland), High Point University and the University of Delaware. Our Family Wizard records indicate that the plaintiff refused each of these communications." On the basis of all the evidence it heard, the court found that the defendant did not exclude the plaintiff from the college selection process. Rather, the court found that the plaintiff excluded himself from that process by refusing to engage with the defendant about Hannah's college choices.

Having determined that the defendant satisfied all of the statutory criteria for a postsecondary educational support order, the court granted the motion and ordered the plaintiff to pay (1) the full amount of the spring, 2019 Quinnipiac University invoice, net of the scholarships and financial aid listed therein, up to the statutory cap set forth in § 46b-56c (f),[8] and (2) two-thirds of the balance of Hannah's postsecondary education expenses, net of scholarships and grants, but including two-thirds of the parental responsibility for Sallie Mae loans. The court further ordered that its financial orders also shall apply to invoice charges by Quinnipiac University for tuition, room, board, books and fees for Hannah's junior and senior year at Quinnipiac University or an equivalent institution. Lastly, the court ordered that the plaintiff fully and timely cooperate in any financial aid or loan applications for Hannah and maintain medical insurance for her while she is enrolled

in college.[9]

After the court issued its decision, the plaintiff filed a motion to reargue, which the court denied in a memorandum of decision dated March 13, 2020. The court determined that the plaintiff's arguments in his motion to reargue were essentially the same as those he made at the hearing on the motion for the support order. In denying the motion to reargue, the court stated that § 46b-56c (d) requires both parents to participate in the college application and selection process and that the defendant did everything she could to engage the plaintiff as early as Hannah's junior year of high school. The court found that the plaintiff "removed himself from the college application process [and] cannot rely on [§] 46b-56c (d) to avoid contributing to Hannah's college expenses when the evidence is overwhelming that he chose not to participate on the decision with the defendant." The plaintiff appealed. Additional facts will be addressed as needed.

I

The plaintiff first claims that the court misconstrued § 46b-56c (d) when it ordered him to pay a portion of Hannah's college education expenses. He argues that the court improperly disregarded the statute's requirement that both parents participate in and agree upon the decision about which educational institution a child will attend. He also contends that the court improperly found that he refused to participate in Hannah's college selection. We disagree with both of these contentions.

To the extent that the plaintiff's claim challenges the court's construction and application of § 46b-56c, our review is plenary. *Schreck* v. *Stamford*, 250 Conn. 592, 597, 737 A.2d 916 (1999) (when question on appeal involves issue of statutory construction, review is plenary); see also *Maturo* v. *Maturo*, 296 Conn. 80, 88, 995 A.2d 1 (2010) (application of statute to particular set of facts is question of law, over which court exercises plenary review). To the extent that his claim challenges the court's factual finding that he refused to participate in Hannah's college selection process, we review it under the clearly erroneous standard. "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *LeSueur* v. *LeSueur*, 186 Conn. App. 431, 441, 199 A.3d 1082 (2018).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to

determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Bender* v. *Bender*, 292 Conn. 696, 708, 975 A.2d 636 (2009).

The plaintiff's claim is predicated, in part, on the language of § 46b-56c (d), which provides: "At the appropriate time, *both parents shall participate in, and agree upon*, the decision as to which institution of higher education or private occupational school the child *will attend*. The court may make an order resolving the matter if the parents fail to reach an agreement." (Emphasis added.) General Statutes (Rev. to 2015) § 46b-56c (d). The plaintiff argues that § 46b-56c (d) must be strictly construed because it is in derogation of the common law. See *Loughlin* v. *Loughlin*, 93 Conn. App. 618, 635, 889 A.2d 902 (obligation of parent to support child terminates when child attains age of majority, which is eighteen in Connecticut), aff'd, 280 Conn. 632, 910 A.2d 963 (2006). "[W]hen a statute is in derogation of common law . . . it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction." (Internal quotation marks omitted.) *Chada* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 788–89, 865 A.2d 1163 (2005). He also argues that the legislature's use of the word *shall* in § 46b-56c (d) creates a mandatory duty. See *Langan* v. *Weeks*, 37 Conn. App. 105, 121, 655 A.2d 771 (1995) (general rule is that word shall is mandatory, not directory). Although we agree generally with the plaintiff's statement of legal principles, we disagree with his claim that the court misapplied the statute when it issued the support order.

Our Supreme Court has recognized "that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . . [I]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . . [It has] often . . . stated that, when the ordinary meaning [of a word or phrase] leaves no room for ambiguity . . . the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) *In re Jusstice W.*, 308 Conn. 652, 660–61, 65 A.3d 487 (2012).

"The test to be applied in determining whether a

statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. . . . If, however, the . . . provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory . . . .” (Internal quotation marks omitted.) *Weems* v. *Citigroup, Inc.*, 289 Conn. 769, 790, 961 A.2d 349 (2008).

Section 46b-56c (d) provides in relevant part that “both parents *shall participate in, and agree upon,* the decision as to which institution . . . the child will attend. . . .” (Emphasis added.) The word *participate* is a verb, meaning to take part. See Webster’s Ninth New Collegiate Dictionary (1985) p. 858. Section 46b-56c (d) therefore mandates that, “[a]t the appropriate time,” both parents participate, or take part in, and agree upon the decision as to which institution of higher education their child will attend. See General Statutes (Rev. to 2015) § 46b-56c (d). Participate and agree are matters of substance as they are the means by which parents are to decide the institution their child will attend. Thus, the word “shall” in § 46b-56c (d) creates a mandatory duty on both parents to both participate in and reach an agreement upon the college their child will attend.

In the present case, however, the court found that the plaintiff refused to participate and, thus, excluded himself entirely from the college selection process. The record supports the court’s finding. The evidence discloses that the defendant informed the plaintiff of the colleges and universities to which Hannah’s SAT scores were sent and where she had applied. The plaintiff did not respond by asking for information about those institutions and never discussed the matter with the defendant or Hannah. In addition, the plaintiff did not voice an objection to any of the institutions to which Hannah had applied or suggest alternative institutions before the defendant filed the motion. The defendant also sent multiple requests to the plaintiff asking him to complete financial aid forms.[10] The plaintiff did not timely open the messages, provide the financial information Hannah needed to complete her college applications,[11] or reimburse the defendant for Hannah’s SAT preparation and the dissemination of her scores.

In sum, the plaintiff has failed to identify any evidence that he attempted to participate in Hannah’s college selection process. On the basis of the evidence in the record, therefore, we agree with the court that the defendant did not exclude the plaintiff from the college selection process; he excluded himself. In so doing, he violated the requirement in § 46b-56c (d) that both parents participate in a child’s college selection process.

The plaintiff nevertheless maintains that, in the absence of an agreement between the defendant and him about Hannah's college choice, the defendant was required to seek an order resolving the matter pursuant to § 46b-56c (d) *before* seeking a support order. We disagree.

The plaintiff in this case violated his statutory duty to participate in the decision about which institution of higher education Hannah would attend. That violation naturally made it impossible for the parties to reach an agreement about Hannah's college choice. That is precisely why § 46b-56c (d) requires both parties to participate in a child's college selection process. Without mutual participation, there can be no agreement. We do not construe the statute to permit a party to evade responsibility for contributing to a child's education by engaging in acts or omissions that violate his statutory obligation. Moreover, by refusing to participate, the plaintiff gave the defendant no indication that he would disagree with Hannah's decision to attend Quinnipiac University or any of the other institutions he knew she was considering. On the contrary, the first time the plaintiff voiced any disagreement with Hannah's decision to attend Quinnipiac University was at the hearing on the defendant's motion, when he testified that he would have preferred Hannah attend the University of Connecticut. There is nothing in the record indicating that he previously had expressed such a preference to the defendant or to Hannah. Under such circumstances, § 46b-56c (d) did not require the defendant to presume a disagreement existed about Hannah's college choice and to seek an order resolving a hypothetical dispute prior to seeking a support order. In addition, by granting the defendant's motion, the court, in effect, exercised its authority under § 46b-56c (d) to resolve any disagreement that had become apparent *after* the defendant had filed her motion.

The plaintiff has cited a number of Superior Court decisions that he argues support his claims on appeal. In its memorandum of decision, the court found that each of those cases was distinguishable from the present case. Although we are not bound by the decisions of the Superior Court, we have reviewed the cases cited by the plaintiff and agree that they are either factually distinguishable or actually support the defendant's position on appeal. The plaintiff's claim that the court misconstrued and misapplied § 46b-56c (d) and improperly issued the support order therefore fails.

II

The plaintiff's second claim is that the court improperly (1) predicated its decision on factual findings from the parties' dissolution of marriage and contentious relationship, and (2) considered his relationship with Hannah when issuing its support order. We do not agree.

## A

The plaintiff claims that the court's decision improperly was predicated on factual findings from the parties' dissolution of marriage and contentious relationship, with particular fault placed on him. We disagree that the court predicated its support order on those facts.

In its February 8, 2019 memorandum of decision, the court noted that the dissolution court "attributed the breakdown of the marriage to the plaintiff's long history of emotional and occasional physical abuse of the defendant, much of which occurred in front of the parties' three young daughters and ordered the defendant to have sole legal and physical custody of the minor children. The record of earlier proceedings indicates that the plaintiff's pattern of behavior has also taken an emotional toll on the parties' children and, consequently, his relationship with them. This is especially true in the case of . . . Hannah. [The dissolution] court further ordered the parties to communicate by e-mail and to use the 'Our Family Wizard' website. On April 26, 2016, [Judge Pinkus] entered orders pursuant to an executed stipulation . . . for family therapy . . . . The defendant testified . . . that the plaintiff did not follow [the therapist's] recommendations. The plaintiff did not offer credible testimony contradicting the defendant.

"Review of the record in this case, both as introduced during the two hearing dates, and as reflected by the court's review of the file with almost 500 entries, reflects that the parties continue to have challenges whereby they are unable to communicate civilly regarding even their children's basic needs and that the plaintiff has not healed the rift in his relationship with [Hannah]. The court makes these preliminary findings to establish a factual background for consideration of the subject motion. The defendant seeks an order establishing the percentage [of] responsibility of each parent for postsecondary education expenses and that such order include room, board, tuition, books, fees, registration and application costs. She also asks the court to order the plaintiff to pay the cost of medical insurance for Hannah while she is in college. The court has considered the [previously stated] facts in the context of their relevance to the application of the statutory criteria for issuance of postsecondary education support orders."

On appeal, the plaintiff argues that by reciting the long and acrimonious history of the parties' predissolution and postdissolution proceedings, the court improperly predicated its support order on the dissolution court's factual findings, including fault, which are irrelevant to an adjudication under § 46b-56c (d). He contends that the parties' dissolution of marriage concerns § 46b-56c only to the extent that the court retained jurisdiction to enter a postsecondary educational sup-

port order.

We disagree that the court improperly predicated its decision on the circumstances surrounding the breakdown of the parties' marriage and the dissolution court's finding of fault. The history of the parties' relationship, especially their inability to communicate civilly about their children's basic needs and why they were ordered to communicate via Our Family Wizard, provided the background relevant to the court's understanding of the parties' communications (or lack thereof) about Hannah's college selection process and *why* it was necessary for the court to resolve the issues surrounding Hannah's postsecondary education. The court's memorandum of decision makes clear that its support order is predicated on the facts surrounding Hannah's college selection process and the plaintiff's failure to participate in that process, not the historical facts found by the dissolution court regarding the breakdown of the parties' marriage. The plaintiff's claim, therefore, fails.

B

The plaintiff also claims that the court improperly considered the nature of his relationship with Hannah in contravention of § 46b-56c (d), which requires the parents to agree on the college their child will attend. We do not agree.

The plaintiff takes exception to that portion of the court's decision stating that there was ample time after April, 2016, for the plaintiff to become involved in the college selection process if he had made an effort to establish a positive relationship with Hannah. The court found that the plaintiff did not ask Hannah about her college preferences and did not reach out to Hannah to congratulate her on her high school graduation and college acceptance. The plaintiff argues that, even though the court itself acknowledged that the legislature did not include the nature or quality of the parent-child relationship as a factor to be considered in fashioning postsecondary orders, the court improperly placed the onus on him to communicate with Hannah. We disagree that the court put an improper onus on the plaintiff. The court's decision to enter an educational support order was not based on the plaintiff's relationship with Hannah. The court found that the plaintiff refused to participate in Hannah's college selection process. The court merely pointed out one way the plaintiff could have attempted to become involved in the college selection process. The plaintiff's claim is without merit.

III

The plaintiff's final claim is that the court's finding that the defendant attempted to include him in the college selection process is not supported by the evidence. He takes exception to the court's finding that the Our Family Wizard "e-mail communications by the defendant establish that she did reach out to the plaintiff

seeking his involvement in the application process and at other stages in the application process." He claims that the court's finding is clearly erroneous and contends that the defendant only contacted him about the colleges to which Hannah had applied and only in the context of seeking reimbursement for expenses incurred.

An "[a]ppellate [court's] review of a trial court's findings of fact is governed by the clearly erroneous standard of review." (Internal quotation marks omitted.) *LeSueur* v. *LeSueur,* supra, 186 Conn. App. 441.

On the basis of our review of the record and as set forth more fully in part I of this opinion, we conclude that the court's finding that the defendant attempted to include the plaintiff in the college selection process is supported by evidence in the record. The defendant sent the plaintiff an e-mail about Hannah's interest in attending college in the spring of the child's junior year of high school. She sent the plaintiff additional communications throughout the following summer and into the fall of Hannah's senior year. The court's factual finding that the defendant attempted to include the plaintiff in the college selection process was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes (Rev. to 2015) § 46b-56c titled "Educational support orders" provides in relevant part: "(a) For purposes of this section, an educational support order is an order entered by a court requiring a parent to provide support for a child or children to attend for up to a total of four full academic years an institution of higher education or a private occupational school for the purpose of attaining a bachelor's or other undergraduate degree, or other appropriate vocational instruction. An educational support order may be entered with respect to any child who has not attained twenty-three years of age and shall terminate not later than the date on which the child attains twenty-three years of age.

"(b) (1) On motion or petition of a parent, the court may enter an educational support order at the time of entry of a decree of dissolution . . . and no educational support order may be entered thereafter unless the decree explicitly provides that a motion or petition for an educational support order may be filed by either parent at a subsequent date. . . .

"(c) The court may not enter an educational support order pursuant to this section unless the court finds as a matter of fact that it is more likely than not that the parents would have provided support to the child for higher education or private occupational school if the family were intact. After making such finding, the court, in determining whether to enter an educational support order, shall consider all relevant circumstances, including: (1) The parents' income, assets and other obligations, including obligations to other dependents; (2) the child's need for support to attend an institution of higher education or private occupational school considering the child's assets and the child's ability to earn income; (3) the availability of financial aid from other sources, including grants and loans; (4) the reasonableness of the higher education to be funded considering the child's academic record and the financial resources available; (5) the child's preparation for, aptitude for and commitment to higher education; and (6) evidence, if any, of the institution of higher education or private occupational school the child would attend.

"(d) At the appropriate time, *both parents shall participate in, and agree upon,* the decision as to which institution of higher education or private occupational school the child will attend. The court may make an order resolving the matter if the parents fail to reach an agreement.

"(e) To qualify for payments due under an educational support order, the

child must (1) enroll in an accredited institution of higher education or private occupational school . . . (2) actively pursue a course of study commensurate with the child's vocational goals that constitutes at least one-half the course load determined by that institution or school to constitute full-time enrollment, (3) maintain good academic standing in accordance with the rules of the institution or school, and (4) make available all academic records to both parents during the term of the order. The order shall be suspended after any academic period during which the child fails to comply with these conditions.

"(f) The educational support order may include support for any necessary educational expense, including room, board, dues, tuition, fees, registration and application costs, but such expenses shall not be more than the amount charged by The University of Connecticut for a full-time in-state student at the time the child for whom educational support is being ordered matriculates, except this limit may be exceeded by agreement of the parents. An educational support order may also include the cost of books and medical insurance for such child. . . ." (Emphasis added.)

All references herein to § 46b-56c are to the 2015 revision of the statute.

[2] See *Buehler* v. *Buehler*, 117 Conn. App. 304, 978 A.2d 1141 (2009); *Buehler* v. *Buehler*, 138 Conn. App. 63, 50 A.3d 372 (2012); *Buehler* v. *Buehler*, 175 Conn. App. 375, 167 A.3d 1108 (2017). At the present time, there are more than 510 entries on the trial court docket.

[3] Given the contentious nature of the parties' relationship, the dissolution court had ordered the parties to communicate with each other by e-mail using the "Our Family Wizard" website. Our Family Wizard is a website offering web and mobile solutions for divorced or separated parents to communicate, reduce conflict, and reach resolutions on everyday coparenting matters, available at https://www.ourfamilywizard.com/about (last visited March 9, 2022). See *Dufresne* v. *Dufresne*, 191 Conn. App. 532, 535 n.5, 215 A.3d 1259 (2019).

[4] SLM Corporation, which offers private education loans, is commonly known as Sallie Mae.

[5] On appeal, the plaintiff does not challenge the court's findings regarding the parties' financial assets and incomes.

[6] An exhibit concerning the communication between the parties on Our Family Wizard was entered into evidence. On April 3, 2016, at 7:51 a.m., the defendant sent the plaintiff a message that stated in part: "Richard, The children and I will be going away to North Carolina on April 9 returning April 13. During this time we will be visiting colleges with Hannah."

The plaintiff responded on April 9, 2016, at 7:51 a.m., stating in part: "Lilach, May I reiterate to you once again that you do not have the authority to unilaterally dictate a modification to a court order by hijacking my parenting time whenever you so choose. You must consult with me and gain agreement PRIOR to making any arrangements that deviate from the court ordered parenting schedule. Moreover, what makes you think I would not want to fully participate in Hannah's college search by attending these campus visits along with her?! Why have you deliberately excluded me from this process to this point? Have you considered that I may too have ideas and plans to assist her in her search? Have you once stopped to consider the devastating message you are sending to our daughter? A smidgen of inclusion and consideration for all would be greatly appreciated in this regard."

At 8:25 a.m. on April 9, 2016, the defendant replied to the plaintiff stating in part: "Richard, As far as Hannah's college search is concerned, I'd like to make one thing very clear. You are responsible for your own communication. You know Hannah is a junior and has begun this process. Have you once inquired with me or with her about what she might be interested in? What she might like to do or study? What schools she'[s] interested in? NO. You haven't." (Emphasis in original.)

[7] The court found that it was undisputed that the plaintiff had no relationship or communication with Hannah.

[8] See General Statutes (Rev. to 2015) § 46b-56c (f), set forth in footnote 1 of this opinion.

[9] On appeal, the plaintiff does not claim that the court improperly ordered him to maintain medical insurance for Hannah as long as she is enrolled as a college student.

[10] On October 26, 2016, the defendant wrote to the plaintiff, in part: "Richard, You will need to provide your financial information for Hannah's college applications. She will need it to fill out her financial aid application within the next 2 weeks. Please provide a financial affidavit and your 2015 tax returns."

On October 26, 2016, the defendant wrote to the plaintiff with respect to the CSS Financial Aid application login information: "Richard, Please complete the noncustodial parent section of the application. Here are the instruction[s] for the first time log in. . . . Please do so ASAP."

On November 11, 2016, the plaintiff responded to the defendant: "I know NOTHING about this. Please explain." (Emphasis in original.)

The defendant replied to the plaintiff: "This is the financial aid application so that Hannah can receive financial aid for college. Surely you would want to minimize our out of pocket cost for her education. Please go in and complete your section."

[11] On September 27, 2017, the defendant sent the plaintiff an e-mail stating: "Richard, I have tried many times to engage in a discussion regarding Hannah's college expenses. I have let you know which schools she was applying to, requested that you be involved in the application for financial aid (which you refused to do and cost her an award to a great school), [and sent] you her decision on which school she felt she really wanted to attend, and sent you numerous inquiries regarding you[r] intentions to contribute to her college education. The only response I received from you is that you would discuss this with [H]annah.

"As of today's date, I am not aware that you have discussed any of this with her. I am very disappointed that you have been completely disinterested in this most important state of our daughter's life.

"While I understand that your relationship with the children has been very strained (see Dr. Israel's court mandated report), I would have hoped that you would have taken this opportunity to demonstrate to [H]annah your commitment to her and her future by showing interest in participating in insuring that her college was paid for by both her parents.

"As things stand now, Hannah has made it clear to me that you have not reached out to her to congratulate her (via phone call, text, [e-mail], or any written correspondence) on her high school graduation or on her college acceptance.

"Hannah is leaning towards a bachelor's degree in health science and Quinnipiac University has an excellent program.

"This will be my last attempt to reach out to you regarding this most important matter. I have tried for a year to engage you in some sort of discussion, but you have opted, for the most part to remain silent."

———————————————————