******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KENNETH K.*
(AC 46579)

Bright, C. J., and Suarez and Westbrook, Js.**

*Syllabus*

Convicted, following a jury trial, of criminal violation of a protective order, the defendant appealed to this court. The defendant claimed, inter alia, that the trial court improperly granted the state's motion to join for trial the information charging him with violation of a protective order with a separate information charging him with breach of the peace. *Held*:

This court declined to address whether the trial court abused its discretion in granting the state's motion for joinder because the defendant failed to show that he was substantially prejudiced or harmed by the joinder.

The trial court abused its discretion in requiring the defendant to comply with family court orders as a condition of his probation because the condition was overly broad such that it lacked a reasonable connection to the defendant's reformation and rehabilitation.

This court could not conclude, on the basis of the information the trial court appropriately considered before sentencing the defendant, that the trial court abused its discretion in imposing a forty year standing criminal protective order that prohibited the defendant from coming within 100 yards of his former wife and prohibited contact with her.

Argued November 21, 2024—officially released May 20, 2025

*Procedural History*

Information charging the defendant with the crime of criminal violation of a protective order, brought to

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

the Superior Court in the judicial district of Stamford-Norwalk, geographical area number one, and tried to the jury before *Blawie, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Reversed in part*; *further proceedings*.

*Allison M. Near*, for the appellant (defendant).

*Meryl R. Gersz*, assistant state's attorney, with whom, on the brief, were *Paul J. Ferencek*, state's attorney, and *Michael C. Bivona*, assistant state's attorney, for the appellee (state).

*Opinion*

BRIGHT, C. J. The defendant, Kenneth K., appeals from the judgment of conviction, rendered after a jury trial, of violation of a protective order in violation of General Statutes § 53a-223. On appeal, the defendant claims that the trial court improperly (1) granted the state's motion for joinder for trial of the information charging the defendant with a violation of a protective order with a separate information charging the defendant with two counts of breach of the peace, (2) ordered the defendant to comply with any family court orders as a condition of probation, and (3) imposed a forty year standing criminal protective order that prohibited the defendant from coming within 100 yards of his former wife, L, and from contacting her. We conclude that only the trial court's condition of probation was improper and, therefore, reverse in part the judgment of the trial court.

The jury heard evidence of the following facts. The defendant and L married in 1997 and have three children together. In 2014, L initiated divorce proceedings, and the defendant and L agreed to a visitation schedule for their children, which provided that the defendant would pick up the children at L's residence. In April, 2015, when the defendant arrived at L's home to pick up

two of their children, an argument ensued between the defendant and L. L warned the defendant that their custody arrangement would not work if his outbursts continued. The defendant then began yelling and swearing at L, calling her a "bitch" and, at one point, approached her and told her that he was going to "bash [her] fucking brains in and [that L was] not going to be able to stop [him]." L called the police and reported a nonphysical domestic altercation. The state ultimately charged the defendant with two counts of breach of the peace in the second degree[1] in violation of General Statutes § 53a-181 (a) (3), and the trial court issued a protective order in November, 2015, which precluded the defendant from contacting L in any manner, including by written, electronic, or telephonic contact, except for parenting exchanges, emergencies, or scheduling regarding their minor children (protective order).[2]

In January, 2016, a few months after the protective order was issued, a hearing took place in the defendant and L's divorce case. Later that day, the defendant texted L about the hearing, mocking her and her attorney.[3] Three days later, L reported the defendant's text message to an advocate at the Domestic Violence Crisis Center and to the police. The state subsequently charged the defendant with violation of a protective order for texting L.

---

[1] The state charged the defendant with intentional breach of the peace in the second degree and, alternatively, with reckless breach of the peace in the second degree.

[2] The protective order contained an exception to effectuate parenting exchanges via curbside pickup only and to allow the defendant to contact L regarding "emergency or scheduling matters as they pertain to their minor children."

[3] The text message read: "You just got slaughtered in court. Your attorney is a retard and has not paid any attention to your case. I know he is sick of you and only cares about being paid [That's] what he tells [the defendant's divorce attorney] anyway. [L]oved the part when [L's divorce attorney] is questioning me about clothing donations ha how comical! I can't wait for the [judge's] decision!"

On March 3, 2023, the trial court in the defendant's criminal case granted the state's motion to join for trial the breach of the peace charges and the violation of a protective order charge. Following a jury trial, *Blawie, J.*, presiding, the jury found the defendant not guilty of the breach of the peace charges but found him guilty of violating the protective order. The defendant was sentenced to a term of imprisonment of five years, execution fully suspended, and five years of probation. As a condition of his probation, the court ordered the defendant to comply with any orders issued in family court. The court additionally imposed a standing criminal protective order for forty years that prohibited the defendant from coming within 100 yards of L and from contacting her.

This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court improperly granted the state's motion for joinder. We need not address whether the court erred in granting the motion for joinder because the defendant was not harmed or prejudiced by the joinder.

The following additional facts and procedural history are relevant to this claim. In February, 2023, the state filed a motion to join the two informations pending against the defendant. The state argued in its motion that the evidence in both cases was cross admissible because evidence in the breach of the peace case was "relevant to show motive, intent, and ongoing animus of the parties" in the protective order case and because the admission of the evidence was more probative than prejudicial. It additionally argued that, even if the evidence in each case was not cross admissible, the state nevertheless satisfied the factors set forth in *State* v.

*Boscarino*, 204 Conn. 714, 529 A.2d 1260 (1987).[4] The defendant filed an opposition to the state's motion for joinder, arguing that the two incidents were factually dissimilar and should not be joined.

On March 3, 2023, the trial court heard arguments from the parties regarding the state's joinder motion. The prosecutor argued that evidence was cross admissible because "the breach of [the] peace and the violation of protective order all stem from conflict from the divorce for childcare and visitation issues and then for things that happened in court, which the mocking text was sent for." The prosecutor further argued that the charges also "clearly fit the *Boscarino* factors [because] they are discrete, easily distinguishable factual scenarios. One is an in person conflict in 2015, one is a text message in 2016. Neither of the crimes are violent in nature and shocking to the conscience that would prejudice the jury against the defendant because they are both joined together. And by joining them . . . we have essentially added one extra witness who would be a police officer because the complaining witness will be testifying in either matter either way . . . ." In response, defense counsel argued that, although the charges were interrelated, there was not a logical connection between the two charges because the fact that there was a confrontation nine months before the defendant sent the text message would not "help a jury make

---

[4] In *State* v. *Boscarino*, supra, 204 Conn. 714, our Supreme Court "identified several factors that a trial court should consider in deciding whether a severance or [denial of joinder] may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *Norris*, 213 Conn. App. 253, 280, 277 A.3d 839, cert. denied, 345 Conn. 910, 283 A.3d 980 (2022).

a determination [as to] whether or not that text violated a protective order." Defense counsel also claimed that, regarding the *Boscarino* factors, "given the [l]ack of time between the cases, the dissimilar nature of the two offenses and the fact that [their effect on] the issue of judicial economy is not really significant . . . they are both very short trials that the state has not met its [burden] beyond the preponderance of the evidence that there should be a joint trial . . . ."

After hearing from the parties, the trial court granted the state's motion for joinder on the record, concluding that the evidence would be cross admissible because "the protective order has its roots in the breach of [the] peace allegation, and so I do think that joinder is in the interest of justice . . . ." The court also stated that it would "specifically instruct the jury to separately consider the charges against the defendant to alleviate any potential prejudice from the joinder and [it] will be instructed as to how to apply the evidence to each of the separate charges." On March 14, 2023, the defendant filed a motion for articulation of the court's decision granting the state's motion for joinder. Before the trial began on March 15, 2023, the court granted the motion for articulation on the record and stated that it would issue a written decision in the event of a conviction because "if there's an acquittal there [would] be no need for articulation."

On March 20, 2023, in its final charge, the trial court instructed the jury regarding the consolidation of multiple charges for trial in accordance with the defendant's written request to charge. Specifically, the court instructed the jury that "the defendant is entitled to and must be given by you a separate and independent determination of whether he is guilty or not guilty as to each count. Each count charged in the information is a separate offense and recall that the state is required

to prove every element in each count beyond a reasonable doubt. The total number of counts charged does not add to the strength of the state's case.

"You may find that some evidence applies to more than one count. The evidence, however, must be considered separately as to each element in each count because each count is a separate entity. This means that you may reach opposite verdicts on different counts. A decision on one count does not bind your decision on another count."

After sentencing the defendant on May 1, 2023, on the violation of protective order conviction, the trial court held a hearing on the defendant's motion for articulation on May 25, 2023. At that hearing, the court issued its articulation on the record, stating that "a preponderance of the evidence showed that the evidence in this case was cross admissible because the defendant was convicted [by] a jury [of] violating a protective order which arose out of his initial arrest . . . . I don't have to get into the *Boscarino* factors, because I did find it to be cross admissible pursuant to [§ 4-5 of] the [Connecticut] Code of Evidence . . . . [T]he charges were linked and dependent on the same evidence, and joining them did bolster important policy considerations without identifiable cost or prejudice to the defendant." This appeal followed.

Before considering the defendant's claim, we set forth the standard of review and legal principles regarding joinder. "The principles that govern our review of a trial court's ruling on a motion for joinder . . . are well established. Practice Book § 41-19 provides that [t]he judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together. . . . In deciding whether to [join informations] for trial, the trial court enjoys

broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that [joinder] resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions. . . .

"A long line of cases establishes that the paramount concern [when joining informations] is whether the defendant's right to a fair trial will be impaired. Therefore, in considering whether joinder is proper, this court has recognized that, [when] evidence of one incident would be admissible at the trial of the other incident, separate trials would provide the defendant no significant benefit. . . . Under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial. . . . Accordingly, we have found joinder to be proper [when] the evidence of other crimes or uncharged misconduct [was] cross admissible at separate trials. . . . [When] evidence is cross admissible, therefore, our inquiry ends.

"Substantial prejudice does not necessarily result from [joinder] even [if the] evidence of one offense would not have been admissible at a separate trial involving the second offense. . . . Consolidation under such circumstances, however, may expose the defendant to potential prejudice for three reasons: First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him . . . . Second, the jury may have used the evidence of one case to convict the defendant in another case even though that evidence would have been inadmissible at a separate trial. . . . [Third] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will

be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jurors] of the accused's guilt, the sum of it will convince them as to all." (Internal quotation marks omitted.) *State* v. *Norris*, 213 Conn. App. 253, 278–80, 277 A.3d 839, cert. denied, 345 Conn. 910, 283 A.3d 980 (2022).

"On appeal, the burden rests with the defendant to show that joinder was improper by proving substantial prejudice that could not be cured by the trial court's instructions to the jury. . . . [A]lthough a curative instruction is not inevitably sufficient to overcome the prejudicial impact of [inadmissible other crimes] evidence . . . [when] the likelihood of prejudice is not overwhelming, such curative instructions may tip the balance in favor of a finding that the defendant's right to a fair trial has been preserved." (Internal quotation marks omitted.) Id., 283.

In the present case, the defendant argues that the evidence pertaining to the breach of the peace charges would not have been admissible at a trial for his alleged violation of a protective order because such evidence was irrelevant to the state's burden to prove the defendant violated the protective order. He contends that the state only needed to demonstrate that he had the "general intent" to engage in conduct that violated the protective order, such that the state's explanation for the joinder—that is, to demonstrate that the defendant had the "specific intent" to violate the criminal protective order—was without merit and carried no probative value relative to the state's burden of proof. In response, the state argues that the evidence was cross admissible because the two incidents were "necessarily interrelated, told parts of the same story, and were committed against the same victim." The state also contends that the defendant did not establish that the jury instructions

failed to cure any prejudice and that any error was harmless.

We need not address whether the court abused its discretion in joining the two cases because the defendant has failed to show that he was substantially prejudiced or harmed by the joinder.[5] First, the court's instructions were sufficient to cure any prejudice that the defendant might have suffered as a result of the joinder. The court instructed the jury to consider each charge separately. It further instructed the jury that the violation of a protective order charge required the state to prove two elements beyond a reasonable doubt: the existence of a protective order and the intentional violation of a condition of that protective order. It then detailed the differences between general intent and specific intent, explaining that the state had to prove only the defendant's general intent to send the text message for the violation of a protective order charge: "The law recognizes two types of intent: general intent and specific intent. General intent is the intent to—engage in conduct. Thus, in this case, it is not necessary for the state to prove that the defendant intended the precise harm or the precise result, which eventuated. Rather, the state is required to prove that the defendant intentionally and not inadvertently or accidentally engaged in his actions. . . . Note [that] general intent is a different legal concept than specific intent. The concept of specific intent applies to . . . breach of [the] peace in the second degree, while this concept of general intent applies only to . . . criminal violation of a protective order." Given the charges in this case, by delineating the differences in the intent required, the court eliminated the chance of any prejudice. See, e.g., *State* v. *McKethan*, 184 Conn. App. 187, 200, 194

---

[5] Accordingly, we need not consider whether the trial court erred in granting the state's motion for joinder or whether it erred in not applying the *Boscarino* factors.

A.3d 293 ("the court's jury instructions cured the risk of substantial prejudice to the defendant and, therefore, preserved the jury's ability to fairly and impartially consider the offenses charged in the jointly tried cases"), cert. denied, 330 Conn. 931, 194 A.3d 779 (2018); see also *State* v. *Parrott*, 262 Conn. 276, 294, 811 A.2d 705 (2003) ("[b]arring contrary evidence, we must presume that juries follow the instructions given them by the trial judge" (internal quotation marks omitted)).

Additionally, there was no dispute at trial that the defendant had the requisite general intent to send the text message that was the basis of the violation of a protective order charge. The only question the jury had to resolve as to that charge was whether the language of the text message violated the terms of the protective order. There is nothing in the record to suggest that the jury's resolution of this question was in any way affected by the joinder of the breach of the peace charges. To the contrary, all the jury had to do was compare the language of the text message to the language of the protective order to determine if there was a violation.

Finally, it is evident that the jury followed the court's instructions and treated each offense separately because it found the defendant not guilty on the breach of the peace charges but convicted the defendant on the violation of a protective order charge. See, e.g., *State* v. *Atkinson*, 235 Conn. 748, 766, 670 A.2d 276 (1996) ("by returning a verdict of not guilty on the charge of possession of a weapon in a correctional institution, which also stemmed from [an] escape incident, the jury evidently was able to separate the two cases and did not blindly condemn the defendant on his participation in the murder"); *State* v. *Gerald A.*, 183 Conn. App. 82, 123 n.21, 191 A.3d 1003 ("[w]e conclude that acquittal of the charges related to [separate]

allegations demonstrates that the jury properly considered each information separately"), cert. denied, 330 Conn. 914, 193 A.3d 1210 (2018). Accordingly, because the defendant was not prejudiced or harmed by the joinder of the two informations, his claim fails.

II

The defendant next claims that the trial court lacked a reasonable basis to impose a condition of probation requiring the defendant to comply with orders in the family court. We conclude that the court abused its discretion because the condition was overly broad such that it lacked a reasonable connection to the defendant's rehabilitation.

The following additional facts and procedural history are relevant to this claim. During the defendant's sentencing on May 1, 2023, the court sentenced the defendant to five years of imprisonment, execution fully suspended, with five years of probation. One of the conditions of probation was that the defendant must "comply with any court orders issued in family court, or noncompliance will constitute grounds for violating your probation." After imposing that condition, the court stated: "I believe I have the authority to do that, I'm trying to choose my words carefully. Your lawyer can appeal this, but I see this as part and parcel of a very nasty divorce where you are now convicted of violating an order of this court with taunting words and threats directly tied to that. . . . A violation of probation would not lie from a motion filed by your ex-wife for contempt. It would be a finding by a court, of this Superior Court, that you have violated one of their orders. The state would then be free to bring a violation of probation [charge] against you. . . . I'm talking about for the next five years of probation, which is until 2028, any violations found by a family court, whether at the trial court or [the] appellate court level, would

be grounds for the state to seek a violation of probation [charge]. If I have no authority to do that the higher courts will tell me . . . . You have no discretion in obeying an order of the court, and you have an extra inducement now to obey any court orders because you have five years hanging over your head . . . . I'm basically putting [the defendant] on notice . . . that a violation of a family court order is grounds to violate his probation here. Whether I have the authority to do that, you're free to appeal that specific issue but I think it's fully warranted by the facts and circumstances I heard about both during this trial and today at this sentencing proceeding."

Defense counsel objected to the condition, stating: "I respectfully object to the court setting that condition, you know, complying with court orders in the family court . . . . I don't think the court, respectfully, has jurisdiction to do that. . . . If there's an order and one doesn't [follow] it, one has the right to appeal that particular decision; it's not a final decision. . . . [I]t's final in the sense of the trial court but it could be . . . the wrong decision." Defense counsel also objected on the basis that the condition was "imposing a potential criminal sanction . . . for violation of a civil order." In response, the court offered to stay that portion of its sentence if the defendant wanted to appeal. The defendant then filed a motion for a partial stay of execution, specifically to "stay the execution of that condition of [his] probation that he must abide by any orders of the family court and that a failure to do so could result in a violation of probation," which the trial court granted.

The following legal principles guide our analysis. "On appeal, the standard of review of an order of probation is whether the trial court abused its discretion. If it appears that the trial court reasonably was satisfied that the terms of probation had a beneficial purpose

consistent with the defendant's reformation and reha-
bilitation, then the order must stand. . . . In reviewing
the issue of discretion, we do so according it every
reasonable presumption in favor of the trial court's
ruling." (Internal quotation marks omitted.) *State* v.
*Thorp*, 57 Conn. App. 112, 116, 747 A.2d 537, cert.
denied, 253 Conn. 913, 754 A.2d 162 (2000).

Pursuant to General Statutes § 53a-30 (a) (17), "[w]hen
imposing sentence of probation or conditional discharge,
the court may, as a condition of the sentence, order
that the defendant . . . satisfy any other conditions
reasonably related to the defendant's rehabilitation."
Indeed, a "sentencing court must have the discretion
to fashion those conditions of probation it deems neces-
sary to ensure that the individual successfully com-
pletes the terms of probation." (Internal quotation
marks omitted.) *State* v. *Pieger*, 240 Conn. 639, 647, 692
A.2d 1273 (1997).

"Probation conditions serve two primary purposes.
[They] are meant to assure that the probation serves
as a period of genuine rehabilitation and that the com-
munity is not harmed by the probationer's being at large.
. . . Because probation is part of a criminal sentence,
probation conditions often restrict the liberty rights
of a probationer by imposing serious restraints on a
probationer's [lifestyle], associations, movements and
activities. . . . Nevertheless, a condition of probation
may diminish a probationer's liberty rights only to the
extent necessary for his reformation and rehabilita-
tion." (Citations omitted; internal quotation marks omit-
ted.) *State* v. *Graham*, 33 Conn. App. 432, 448, 636 A.2d
852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994);
see, e.g., *State* v. *Thornton*, 55 Conn. App. 28, 33–34, 739
A.2d 271 (1999) (trial court erred in including probation
condition that required defendant to pay money into

fund to reimburse victim for any treatment or counseling because it was "too remote to be considered reasonably related to the offense" (internal quotation marks omitted)); *State* v. *Graham*, supra, 448 ("[w]e conclude that the conditions regarding cleanliness of the home and care and cleanliness of the children do not serve to rehabilitate or to reform the defendant because they do not relate to the defendant's behavior involved in her convictions for larceny and drug crimes"); cf. *State* v. *Pieger*, 42 Conn. App. 460, 468, 680 A.2d 1001 (1996) ("[p]ayment of a charitable contribution to the hospital in which the defendant's victim received her treatment is a condition that is reasonably related to the defendant's rehabilitation"), aff'd, 240 Conn. 639, 692 A.2d 1273 (1997).

On appeal, the defendant argues that the probation condition that he not violate orders of the family court is not reasonably related to his rehabilitation because the condition was too remote from the conduct of his conviction.[6] In response, the state argues that the challenged condition was appropriate and reasonably

---

[6] The defendant additionally argues that the trial court lacked both the authority and the jurisdiction to impose the condition. First, the defendant argues that the trial court lacked the authority to impose the condition because there is no apparent authority for the criminal court to impose a condition that requires compliance with the orders of a civil court. We are not persuaded. Section 53a-30 (a), which governs the conditions of probation that a trial court can order, affords trial courts wide discretion to determine what conditions of probation to order as long as they are reasonably related to the defendant's rehabilitation, including conditions that do not rise to the level of criminal activity on their own but would do so if the defendant were to violate them. Second, the defendant relies on General Statutes §§ 46b-1 and 46b-2 to argue that the court lacks the jurisdiction to impose such a condition because, "if a matter concerns the family court and orders of that court, it should first be placed on that docket and only referred to another court if the family court judge deems it 'more suitable for the disposition of the case.' " Those statutes address the disposition of "family relations matters," not the consequences that a party may face for disobeying a court's order in such matters. Consequently, we reject the defendant's arguments.

related to the defendant's rehabilitation because the trial court considered reliable information of the defendant's past failures to comply with family court orders.

We conclude that the trial court abused its discretion when it imposed the probation condition because the condition, as it stands, is overly broad such that it is not reasonably related to the defendant's reformation and rehabilitation. First, the condition is violated if the defendant is found to have violated a court order rather than if he is found in contempt. This distinction is significant because, "[t]o constitute contempt, it is not enough that a party has merely violated a court order; the violation must be *wilful*." (Emphasis added.) *Puff* v. *Puff*, 334 Conn. 341, 365, 222 A.3d 493 (2020). Thus, the defendant may face up to five years of incarceration if he in good faith disputes a motion filed by L claiming that he has violated an order of the family court. It is not unusual for litigants in civil proceedings, especially contentious divorce cases, to have reasonable disagreements regarding the meaning of orders previously issued by the court. For this reason, the Supreme Court has held that a court may issue a remedial order even when it finds that the defendant is not in contempt. See *O'Brien* v. *O'Brien*, 326 Conn. 81, 99, 161 A.3d 1236 (2017) ("Unlike contempt penalties, a remedial award does not require a finding of contempt. Rather, [i]n a contempt proceeding, even in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order." (Internal quotation marks omitted.)). Exposing the defendant to a violation of probation charge simply because he unsuccessfully opposes a motion filed by L accusing him of violating a court order is not reasonably related to the rehabilitation goal of assuring the defendant does not, in the future, wilfully ignore court orders. Instead, it could have a chilling effect on his right to, in good

faith, present arguments and claims before the family court.

Second, the condition of probation imposed by the trial court is overbroad because it is violated upon a court's finding that the defendant failed to comply with a court order, without regard to the defendant's right to challenge such a finding on appeal. See *Bryant* v. *Bryant*, 228 Conn. 630, 636, 637 A.2d 1111 (1994) (holding that civil contempt findings are appealable final orders). As the condition currently stands, the defendant could be found in violation of his probation and sentenced to a period of incarceration for violating a court order, only to have the violation of the court order reversed on appeal. In that circumstance, the defendant will have been incarcerated when he should not have been and before he could fully exercise his rights to challenge the ruling in the family court. Thus, although we recognize that the defendant's compliance with court orders is reasonably related to the offense that he was convicted of, the condition imposed in the present case exceeds that which is necessary for the defendant's rehabilitation. Accordingly, this condition of probation, as imposed by the court, cannot stand. Given our conclusion, a remand is necessary for the court to consider whether a different, more limited condition is necessary for the defendant's rehabilitation.

## III

We last turn to the question of whether the trial court erred in imposing a forty year criminal protective order that prohibited the defendant from coming within 100 yards of L and prohibited contact with L. We conclude that the court did not abuse its discretion by imposing the standing criminal protective order.

The following additional facts and procedural history are necessary to our resolution of this claim. During the defendant's sentencing, the trial court heard from

defense counsel, the prosecutor, and L. Defense counsel asked for a probationary sentence, arguing that the defendant had no previous convictions and that his text to L was not "a threat to harm or injure anyone at all. It was a[n] unfortunate comment about the proceedings in the court." The prosecutor detailed the defendant's other pending cases,[7] and L gave a statement regarding the defendant's conduct, his failure to comply with court-ordered alimony and child support payments, and his failure to undergo a court-ordered neuropsychological exam.[8] L additionally read statements from herself and the defendant's daughter, each of which described the defendant's verbal abuse toward them.

At the conclusion of the sentencing, the trial court issued a standing criminal protective order stating that the defendant had to stay 100 yards away from L and could not contact her for the next forty years.[9] In June, 2023, the defendant filed a motion to modify the standing criminal protective order, requesting that the order be modified to "permit the defendant to have electronic

[7] The defendant at the time of sentencing had three pending cases. The defendant had two additional charges of violation of a protective order and a case charging him with assault in the second degree and intimidation connected to a road rage incident. He ultimately pleaded guilty to assault in the third degree in violation of General Statutes § 53a-61 and breach of the peace in the second degree in violation of General Statutes § 53a-181. He was sentenced to one year of incarceration, execution suspended, and two years of probation.

[8] L stated: "From 2014 to just this past week, [the defendant] has threatened me and the children with physical violence, intimidated us physically and verbally; he has done these things to my family and friends, to officers of the court who have even filed sanctions, police officers, and even his own family. . . . I carry mace everywhere; I have cameras; I've had to leave my house on more than one occasion because someone told us he was enraged and on his way over. The children and I have left the house because we knew something that was said or done would enrage him. For days after he was found guilty here, I was on the edge, looking over my shoulder."

[9] The defendant was also ordered to surrender or transfer all firearms and ammunition.

communication through Our Family Wizard[10] with [L] necessary to arrange and effect visitation with their child . . . and to allow the defendant to do pickup and drop-off at the end of the driveway to [L's] residence . . . ." (Footnote added.) The trial court granted the motion in part and issued a new protective order, which, in addition to permitting electronic communications through Our Family Wizard, allowed the defendant to pick up and drop off their child at the end of L's driveway, "if so ordered [by the] family court," and permitted him to attend court if a matter was pending in family court.

On appeal, the defendant argues that imposing a standing criminal protective order of such significant length was not necessary because this was the defendant's first conviction, there was no history of abuse or threats between the defendant and L, and the conduct underlying the conviction occurred five years before the sentence was imposed. In response, the state claims that the defendant cannot demonstrate that the court abused its discretion as to the terms of the order because the trial court's modifications demonstrate that the court "responded to and alleviated the concerns raised by the defendant" and because the nature and circumstances of the defendant's criminal conduct justified the trial court's imposition of the order.[11] We agree with the state.

---

[10] "Our Family Wizard is a website offering web and mobile solutions for divorced or separated parents to communicate, reduce conflict, and reach resolutions on everyday coparenting matters . . . ." *Buehler* v. *Buehler*, 211 Conn. App. 357, 361 n.3, 272 A.3d 736, cert. denied, 343 Conn. 917, 274 A.3d 869 (2022).

[11] The state additionally argues that any challenge to the protective order's duration is unpreserved for appellate review because the defendant only contested the terms of the standing criminal protective order during trial, not its duration. Even if unpreserved, however, we exercise our discretion to consider the merits of the claim because the state would not be prejudiced by our decision to do so.

General Statutes § 53a-40e (a) provides that a trial court may issue a standing criminal protective order "if the court is of the opinion that the history and character and the nature and circumstances of the criminal conduct of such offender indicate that a standing criminal protective order will best serve the interest of the victim and the public . . . ."[12] We review a trial court's imposition of a standing criminal protective order for an abuse of discretion. See *State* v. *Mieles*, 221 Conn. App. 164, 173, 301 A.3d 1063 (2023), rev'd on other grounds, 351 Conn. 765,  A.3d  (2025).

In the present case, we cannot conclude that the trial court abused its discretion in imposing the standing criminal protective order. The defendant argues that the court did not consider the fact that this was his first conviction, that there was no history of abuse or threats, or that the conduct that was the basis for his conviction occurred five years before the sentence was imposed because, had it done so, it would have determined that an order of such length was not necessary. We are not persuaded, as the record does not reflect that the court did not consider such factors when it determined whether to impose the standing criminal protective order. Indeed, although the court heard from the defendant and his counsel before imposing its sentence, it also heard from the prosecutor, L, and the defendant's child regarding the defendant's outstanding criminal charges and his conduct toward L and his children, including his actions in the week before the sentencing hearing. On the basis of the severity and continuing nature of the defendant's conduct toward L and their children, the trial court ultimately determined

---

[12] The trial court may only impose a standing criminal protective order if a defendant is "convicted of . . . (1) a violation of . . . section 53a-223 . . . or (2) any crime that the court determines constitutes a family violence crime, as defined in section 46b-38a, or attempt or conspiracy to commit any such crime . . . ." General Statutes § 53a-40e (a). It is undisputed that the defendant was convicted of one of the qualifying offenses.

that a standing criminal protective order of this duration best served the interests of L, their children, and the public.[13] On the basis of the information the court appropriately considered before sentencing the defendant, we cannot conclude that the court abused its broad discretion when it imposed the standing criminal protective order.

The judgment is reversed with respect to the condition of the defendant's probation requiring that he not violate any family court order and the case is remanded for resentencing with direction to delete or modify that condition; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[13] The trial court stated: "I'm very familiar with the trauma, the emotional harm, that contentious family matters can bring upon not just the adults but the children. And sir, when the elephants fight it's the grasses that get trampled and I can see that your relationship with your children, if it still exists, has been virtually destroyed by this case."